STATE of Tennessee, Appellee,

v.

Gary Rocco DENAMI, Appellant.

Court of Criminal Appeals of Tennessee,
Nashville.

Dec. 5, 1979.

Permission to Appeal Denied by Supreme
Court Feb. 25, 1980.

James L. Weatherly, Jr., Nashville, for
appellant.

William M. Leech, Jr., Atty. Gen., William W. Hunt, III, Asst. Atty. Gen., Harold B. McDonough, Jr., Asst. Dist. Atty. Gen., Nashville, for appellee.

## OPINION

DWYER, Judge.

The appellant appeals from his conviction under a two-count indictment wherein he was charged in each count with drawing a check without sufficient funds, T.C.A. § 39–1959, for an amount over $100. The punishment on the first count was fixed by the jury at confinement for not less than three years nor more than five years and on the second count at not less than nor more than three years.

The court-appointed public defender of Davidson County raises these assignments of error on behalf of the appellant: (1) the evidence preponderates against the conviction of the defendant and in favor of his innocence, (2) the trial court erred in allowing the defendant to waive his right to counsel and represent himself at the trial, (3) the trial court erred in refusing to grant the defendant's motion to suppress fruits of the illegal search of his vehicle at the Eighth and McGavock Branch of First American National Bank, (4) the trial court erred in overruling the defendant's motion to dismiss the indictment in which it was alleged that the indictment did not conclude with the language, "against the peace and dignity of the State of Tennessee."

At the outset of our narration of the evidence we call attention to certain settled rules of law. It is not necessary for us to discuss the evidence offered on a pro and con basis, for the jury has settled the conflicts in testimony and credibility of witnesses. *Hargrove v. State*, 199 Tenn. 25, 28, 281 S.W.2d 692, 694 (1955). It is not our duty to reevaluate the evidence as thus accredited. *State v. Grace*, 493 S.W.2d 474, 476 (Tenn.1973). The evidence summarized here is viewed in the strongest legitimate light in the favor of the State's theory of the prosecution. *State v. Pritchett*, 524 S.W.2d 470, 472 (Tenn.1975).

Around 11:00 A.M. on December 16, 1977, Mr. Gordon Publow, Jr., assistant manager of the 100 Oaks Office of the First American National Bank in Nashville, saw the appellant at the Anytime Teller located in front of that office. Appellant then entered the bank and approached Mr. Publow's desk with a business-style check encoded by a check protector in the amount of $15,500. The appellant asked Publow to cash the check which was made payable to First American National Bank and was drawn on appellant's account with the bank. He showed Mr. Publow a California driver's license as identification. Mr. Publow, concerned about the amount of the personal check and the fact that he had never seen the appellant before, dialed the bank's computer and, using his personal identification code number, requested a "mark-up" of the check on appellant's account. This procedure results in a "hold", in the amount encoded, on the contingent balance of the account. The contingent balance shows the amount in the account at a particular time during the day, including any deposit the customer has made during that day, if he requested that it be "marked up", so that those funds are available for withdrawal during the same day. This contingent balance survives only until the end of the banking day, when it is superceded by the book balance—an amount ascertained by the bank's bookkeeping department from actual physical records of transactions. In other words, the contingent balance is valid beyond one day only if the bank receives proof that funds were deposited to match the amount shown in the contingent balance.

Although the computer accepted the "hold" on appellant's account, indicating that there were sufficient funds to cover the amount of the check, Mr. Publow remained suspicious and, again using his personal code number, requested appellant's book balance (which reflects the balance at the end of the previous banking day) from the computer. After being notified that the book balance was zero, Publow returned the check to the appellant, refusing to cash it, and suggested that he go to the bank's

main office (where appellant claimed to have made several deposits earlier that morning) to check on his account. After appellant left, Mr. Publow removed his "hold" on the account and learned that the contingent or "available" balance was over $78,000.00. Publow, uneasy about the conflict in the balances and the overall transaction, notified the bank's security office and described what had happened.

Around 11:30 A.M. the appellant approached Ms. Anne Wilson, assistant manager of the Melrose Branch of the First American National Bank, presented a business-style check in the amount of $15,500, and asked her to cash it. He deviated from his procedure at the 100 Oaks Branch by telling Ms. Wilson that she should check the computer as to his balance, and he then showed her a California driver's license. Using her code number for the computer, she "marked up" the amount of the check, i. e., placed a "hold" on that amount of funds in the account, and gave him $5,000 in cash and a $10,500 cashier's check. Within minutes after appellant departed Ms. Wilson received an alert from security about the appellant and his check activities.

The next check incident occurred at 12:30 P.M. when the appellant appeared at the desk of Ms. Linda Hamsley, the acting assistant manager of the Eighth and McGavock Office of the bank. The appellant used an approach similar to the one at the other two branches. Ms. Hamsley, however, received information about the appellant over the phone while he was waiting for her to help him, and she called bank security without cashing the check.

The appellant was taken into custody at that location and stated that the $78,000.00 in the account was his, that he made many deposits in his account, that he was wealthy, and that he was a member of the bank's board of directors. He later admitted that the funds were not his, but claimed that when he found out about the money, he tried to withdraw it.

The appellant's rented car was searched at the police tow-in lot and some fifteen or twenty other checks were found already cut by a check protector in the amount of $15,-500 and dated December 16th. The appellant's passport, his vaccination certificate, and a page from the telephone directory listing the branch offices of the First American National Bank in Nashville were also found in the car.

There was testimony that appellant, in making transactions in his account with the bank prior to December 16th, had demonstrated to the tellers how to program the transactions into the computer. There was further proof that appellant had been employed by the bank in the data programming department and that he could have obtained information from the computer about the code numbers used by bank employees for computer entries. There was also proof that appellant was employed as a computer operator for another company at the time of the incident.

The evidence further reflects that on December 16th there was no money in appellant's account and that this condition had existed for about a week prior to that time. There was also testimony that appellant had never had more than $722.95 in his account at any one time.

The appellant did not testify but called some of the State's witnesses and a witness as to his whereabouts on the morning of December 16th. This witness had no memory of where the appellant was on that date.

█ In his first assignment of error the appellant urges that no violation of T.C.A. § 39–1959 occurred because at the time the checks were passed he had proof that funds sufficient to cover the checks were in his account. Under the evidence which was accredited by the jury in reaching its verdict, we promptly reject such a theory. It is obvious that the appellant actually had no funds whatsoever in his account at the time he presented the checks. While the computer showed the contingent balance to be $78,556.32, there was no evidence adduced to establish the actual presence of such an amount in appellant's account. The evidence shows that appellant had exten-

sive knowledge of the bank's computer, that he was in possession of many checks that had been cut in the amount of $15,500 on a check protector, and that he visited three branch banks in a matter of minutes, presented a check at each branch, and was successful in cashing one of the checks. From these facts the jury could and did conclude circumstantially that appellant had programmed the computer or caused it to be programmed and was aware that he did not have such funds in the bank at the time he presented the checks. Indeed, he admitted that the money was not his when questioned by the bank officer. The gravamen of the offense charged is the fraudulent intent with which the check is passed or uttered. *Stines v. State,* 556 S.W.2d 234, 235 (Tenn.Crim.App.1977). We think there is overwhelming evidence that the checks were delivered with fraudulent intent. This assignment is overruled.

■ The second assignment challenges the trial court's allowing the appellant to represent himself. The appellant by oral motion asked to be allowed to represent himself and in support of that motion filed a written waiver of his right to assistance of counsel in compliance with T.C.A. § 40–2015. The waiver mentioned T.C.A. §§ 40–2015 and 2016 * and demonstrated appellant's understanding of the requisites of those statutes. The trial court made careful inquiry into appellant's request as required in T.C.A. § 40–2016 and warned him of possible punishment and of the skill of the attorney general and advised appellant against self-representation. It is obvious that the trial court was conscientiously satisfied that appellant knowingly and voluntarily waived his right to counsel as required under *State v. Burkhart,* 541 S.W.2d 365, 368 (Tenn.1976). We find no error here; the assignment is overruled.

■ The appellant contests in the third assignment of error the trial court's failure to suppress evidence obtained in the search of his car. When the appellant was arrested, inquiry was made as to the location of his car. The evidence reflects that the car was towed in and searched at the police lot. The State maintains that the search of appellant's car was consensual. The appellant argues here that his consent was coerced while he was in custody in front of the general sessions court commissioner, when he was told that if he did not consent, a search warrant would be obtained. He relies on *Bentley v. State,* 552 S.W.2d 778 (Tenn.Crim.App.1977), wherein we held that consent was invalid when given in a coercive atmosphere after a threat that a warrant would be obtained. Here, however, the appellant denied at his suppression hearing that anyone ever told him that a warrant would be obtained if he did not consent. Several of the State's witnesses related that such a statement was made and testified that appellant, when asked in the courtroom for permission to search his car, consented. They also said that he voluntarily gave his car keys to one of the officers. This situation is easily distinguishable from *Bentley* because, in addition to appellant's denial that anyone mentioned obtaining a warrant, consent was given freely in open court with no trace of coercion. This is far removed from the coercive atmosphere in *Bentley* where the defendant was in police custody in the back of a squad car, isolated from the world. We agree with the trial court's conclusion at the end of the evidentiary hearing that the search was consensual.

■ As an adjunct to the third assignment, appellant urges that his statement to the police officers consenting to the search of his car was admitted into evidence although he was not provided with a copy of the statement pursuant to his motion for discovery under Rule 16(a)(1)(A) of the Tennessee Rules of Criminal Procedure. At the motion for new trial, testimony by the assistant district attorney general reflected that he had sincerely made an effort to comply with appellant's motion and that, although he had a copy of the motion in his file, he did not have any independent recollection of it. The attorney general did al-

* These sections have been repealed since the trial, but *see* Tenn.R.Crim.P. 44.

low the appellant to view all of the tangible evidence which the State was going to introduce and gave the appellant and his father access to the bank's records. While we agree that the State should have provided a copy of the statement for the appellant, we note that no objection was offered at the time the statement was introduced. This fact, coupled with the absence of any surprise to the appellant at the admission of the statement into evidence, renders any error harmless.

■ In his fourth and last assignment of error appellant maintains that when the State by motion asked that both counts of the indictment be amended to strike the notice provisions beginning on the seventh line from the bottom, the order granting the amendment removed the phrase, "against the peace and dignity of the State of Tennessee". Appellant argues that since that phrase was stricken the indictment was void. While the motion to amend perhaps incorrectly states the number of lines to be excised, it plainly says only that the "provisions of notice" language (which is clearly surplusage) is to be removed. The trial court, in overruling the motion for new trial, agreed that the order entered on the motion to amend was not completely clear, but found that the phrase "against the peace and dignity of the State of Tennessee" had not been removed and that the indictment as read and handed to the jury after the charge contained the phrase. This assignment is accordingly overruled.

The judgment of the trial court is affirmed.

DUNCAN and BYERS, JJ., concur.