TúRley, J.
delivered tire opinion of the court.
The prisoner was indicted and convicted in the circuit court of Giles, for the offence of burglary.
The proof as contained in the bill of exceptions, shows that the building in which the supposed offence was committed, was a store-house in which the prosecutor carried on the business and trade of vending and selling merchandize: that it had two out doors, one facing the public square in the town of Cornersville on the south, the other a public street on the east; that his dwelling or mansion house was on the same lot, enclosed by a paling, coming up to the two opposite corners of the store house, the dwelling house being twenty nine or thirty feet distant from the store house, that the store house and mansion house were on the same lot, and belonged to him in his own right: that there was no connexion between the dwelling house and store, by the roof or any covered way; that there was a small gate immediately fronting his mansion house to the east, and also a large gate for wagons between that gate and the store house, through which he hauled his wood; that there was also a small gate immediately fronting his mansion house; that there was a back door in the end of his store opening into the yard towards his mansion thro ugh which he generally passed from his mansion to his store house; that he kept coffee and sugar in his store for sale, and that when his family needed these articles, they came to the store and got them, that he sometimes kept flour for sale in the store, and that his family came and got of it when wanted; that there were no separate and distinct parcels kept for his family use, but that it was always taken out of that kept for sale; that he sometimes kept his saddles in the store house, but that for more than twelve months prior to the night of the burglary, there had been no one living in the house, and that no one during that time had slept there.
And the question is, whether this store house be such a dwelling house or part or parcel thereof, as a burglary can be committed in. On this point the judge charged, “That to constitute the offence of burglary, the breaking and entering must be of a mansion-house, that every house or permanent *384 edifice for the dwelling or habitation of man is taken to be a mansion-house, in which burglary may be committed, and that the term mansion-house includes the out houses, such as warehouses, stables, cow houses or dairy houses, though not under the same roof or joining contiguous to the dwelling-house, provided they be parcel thereof; and that any outhouse within the curtilage and not in fact used as part or parcel of the mansion-house, for instance a barn, a stable, a dog-house or any other building, although within the curtilage, if it be unoccupied or not used in connection with the dwelling-house, or as part thereof, it would not be such a house as burglary could be committed in; that the term curtilage was defined to be a yard or piece of ground lying near to and used with the dwelling-house, and embraced within the same common enclosure, and that a store situate within the curtilage as thus defined and used as a store-house, for the purpose of merchandize, and connected with the principal mansion or dwelling-house and having entrance with it, would be a parcel of the mansion-house and be the subject of'burglary.”
This charge is not sufficiently precise if it be not erroneous; more no doubt from the intrinsic difficulty of the subject than any thing else, and was certainly not calculated to give the jury accurate information of the matter in controversy, if it be not calculated to mislead them. It will become necessary for us to examine the nature of the offence charged to have been committed, with the view of ascertaining how far the charge of the circuit judge is correct, and whether the finding of the jury is supported by law. The dwelling-house of an individual hath peculiar sanctity in the estimation of the common law. It hath been called his castle and hath many privileges attached to it. Persons are prohibited under severe penalties from at any time entering it, unless under absolute necessity in a few particular cases, without the owner’s consent, and offences committed in it by strangers have always been more severely punished than if committed elsewhere.
The offence of burglary, which can be committed in no other place, and which may be complete, although the person designing it, may be frustrated in his attempt, is a felony at common *385 law without benefit of clergy, and is with us a high crime, punishable by a long confinement in the penitentiary. It becomes important then to see that this privilege, the infraction of which leads to such serious consequences, be not extended beyond what necessity requires and the law designs.
Lord Coke defines a burglar to be “he that in the nighttime breaketh and entereth into a mansion-house of another, of intent to kill some reasonable creature, or to commit some other felony within the same, whether his felonious intent be executed or not.”.
It must be proven that the premises broken and entered were either a mansion-house or parcel of a mansion-house. Every house for the dwelling and habitation of man is taken to be a mansion-house, wherein burglary may be committed. 3 Inst. 64-5; 2 East, P. C. 491. There is not, and never has been any difficulty in ascertaining what constitutes a mansion or dwelling-house; but in as much as it has been held that a dwelling-house at common law not only included the premises actually used as such, but also such out buildings as were within the curtilage or court yard surrounding the house, great difficulty has been frequently experienced in deciding what buildings come within this protection, and very nice distinctions have been taken on the subject, so much so, that it is impossible to extract any general principle from the cases — and it would be a hopeless task, to think of examining and comparing them, with the view of reconciling them. So serious has this difficulty been felt in England, that the statute of 7th and 8th George 4th, ch. 29, has been passed to remedy the evil, by which it is provided, that “no building although within the same curtilage with the dwelling-house, and occupied therewith, shall be deemed to be a part of such dwelling-house for the purpose of burglary, unless there shall be a communication between such building and dwelling-house, either immediate or by means of a covered and enclosed passage, leading from one to the other.”
But this statute not being in force in this country, we are left to extract our rule of action from the common law as we best may. The design is to protect the peace and quiet of one’s place of abode by day and by night — and no extension of a *386 principle, enforced by such heavy penalties, ought to be made beyond what will give such protection in a fair and adequate manner. To hold that every house which may be built in a curtilage or court yard of any extent, whether necessary to the enjoyment of the dwelling-house or not, whether used for family purposes or not, and entirely disconnected from the mansion-house, except by a common wall or fence, is part and parcel of the dwelling-house, is absurd — and not warranted as we think by a fair construction of the cases — though, as has been observed, it is difficult if not impossible to amalgamate them. As it is the dwelling which is protected, when the principle comes to be extended to a building not attached thereto but distinct and separate from it, upon what principle can it be held to be the subject of the burglary — unless it be that it is quasi a dwelling-house? and how can it be such, unless used for domestic purposes, or purposes necessary for the complete enjoyment of the dwelling? -
Hawkins in his Pleas of the Crown, page 104, says: “AH outbuildings, such as barns, stables, dairy-houses, &c., adjoining to a house are looked upon as a part thereof.” The words &c., upon no principle of fair construction can be held to mean other than those of the same class spoken of, to-wit, offices attached to the dwelling-house, and intended for the comfort and convenience of the owner, to be used in • house-keeping and not for a distinct and separate purpose altogether, as for trading or manufacturing.
Archbold in his Treatise on Criminal Law, page 286, says: “The term dwelling-house includes in its legal signification, all out-houses occupied with and immediately communicating with the dwelling-house.” Can a house used for other than domestic purposes, be said to be occupied with the dwelling-house? Surely not, for the complete and ample enjoyment of either does in no degree depend upon the other. Shall it be said that a man has not complete and ample enjoyment of his dwelling-house, if he be disturbed in that of his handicraft shop, his ware-house for the storage of other people’s merchandize, his store-house for the retailing of goods, although these may be in the curtilage, but distinct and separate from his mansion? We *387 think not- — we know of no principle justifying such a position, but hold the law to be,''that an out-house, though within the curtilage is not a part or parcel of the mansion or dwelling-house, unless it be used by the family or some part of it, and for purposes designed to promote the comfort, enjoyment and ease of those engaged in house-keeping. And that if the building be used for purposes wholly distinct and separate, as it is, when it is wholly appropriated to manufacturing, or to buying and selling, no burglary can be committed in it. We are not without express authorities to this point. In the case of the State vs. Bryant Ginns, 1 Nott & McCord, 583, it is held by the Constitutional court of South Carolina, “That to break and enter by night a store-house in which no one sleeps, which has no internal communication with the dwelling-house, and is unconnected with it, except by a fence, is not burglary.” Mr. Justice Nott, who delivered the opinion of the court, says; “A house to be a parcel of the mansion-house, must be some how connected with or contributory to. it, such as kitchen, smokehouse, or such other as is usually considered as a necessary appendage of a dwelling house. It cannot embrace a store, blacksmith shop, or any other building separate from it and appropriated to another and distinct use. I admit that a store will be so considered if in a part of the house, or under the same roof, or if any of the family sleep in it. And this view I think is supported by the best authorities on the subject.” In the case of the State vs. Henry A. Langford, 1 Devereux (North Carolina) Rep. 253, it is held, “that burglary can only be committed in a dwelling house or such other buildings as are necessary to it as a dwelling. Therefore, it is no burglary to break the door of a store situate within three feet of the dwell-f jng-house and enclosed in the same yard.” Judge Henderson, foho delivered the.opinion of the court, says, “The law throws a mantle around the dwelling of a man, and protects not only the house in which he sleeps, but also all others appurtenant thereto as parcel or parts thereof, from meditated harm. Thus the kitchen, laundry, smoke-house, and the dairy are within its protection, for they are all used as parts of one whole, each contributing in its way to the comfort and convenience of the *388 place as a mansion or dwelling-house; they are used with that view and that alone, and it may be admitted that all houses contiguous to the dwelling are ¡prima, facie of that description. But where it is proved that they are used for other purposes, for labor, as a work-shop; for vending goods, as a store-house — this destroys the presumption. It then appears that they are there for purposes unconnected with the actual dwelling, and do not render it more comfortable or convenient as a dwelling. In short they are nota part or parcel thereof, but are used for other and distinct purposes, unconnected with the actual dwelling; the house as a dwelling is equally comfortable and convenient without them, as with them. These principles I think are fully recognized by authority.”
These two cases are directly in point; they are decided by courts of very respectable authority. We think they are supported by reason, and are not at war with English precedent, and we are disposed to go with them. Such then being the law, it will be perceived at once, that the charge of the judge below is not sufficiently specific, and in some respects erroneous; and that the verdict of the jury is not supported by the testimony.
The judgment of the circuit court will, therefore, be reversed, and the case remanded for further proceedings.