**STATE of Tennessee, Petitioner,**

v.

**Arthur T. PRITCHETT and Johnny Green, Respondents.**

Supreme Court of Tennessee.

June 2, 1975.

William C. Koch, Jr., Asst. Atty. Gen., Nashville, for petitioner; R. A. Ashley, Jr., Atty. Gen., Nashville, of counsel.

J. Pope Dyer, John W. Murrey, III, Chattanooga, for respondents.

OPINION

HARBISON, Justice.

Respondents were jointly indicted by the Grand Jury of Hamilton County, Tennessee for the burglary of a warehouse and also for receiving and concealing ten automobile tires belonging to the warehouse. Upon the trial of the case the jury acquitted the respondents of the charges of burglary, but found them guilty on the charges of receiving and concealing. Pursuant to the provisions of T.C.A. § 39–4218, the jury were instructed that there could be a conviction only on one of the two charges of receiving and concealing, and the jury then found the defendants guilty of receiving stolen goods of a value in excess of one hundred dollars pursuant to T.C.A. § 39–4217(A). Each defendant was sentenced to serve not less nor more than three years in the state penitentiary.

Upon appeal of this conviction, the majority of the Court of Criminal Appeals found the evidence insufficient to establish ownership of the ten tires in question, and remanded the case for a new trial. This Court granted certiorari to consider the sufficiency of the evidence, and thereafter counsel for one of the respondents also assigned errors pursuant to the provisions of T.C.A. § 27–823.

There is little dispute as to the material facts. A warehouse owned by Cherokee Warehouses, Inc., situated on Eighth Avenue in Chattanooga, Tennessee, was equipped with a silent burglar alarm. On Sunday afternoon, May 6, 1973, at a time when the warehouse was closed for business, this alarm was tripped at 5:18. Charles W. Hill, an employee of the alarm company, and his supervisor noticed the signal in the offices of the company, American District Telegraph, and Mr. Hill immediately drove to the burglarized warehouse, while his supervisor telephoned the police. A member of the Chattanooga Police Department received the alert from the alarm company at approximately 5:20 p. m. and arrived at the warehouse within a very few moments. Upon turning into a large parking lot on the south side of the warehouse, he observed a white Chevrolet automobile bearing a Georgia license plate parked within 35 to 50 feet from the warehouse. Respondent Green was sitting in the automobile on the passenger's side and respondent Pritchett was standing close to

the right side of the vehicle. The officer observed six new automobile tires with tags still attached, in the back seat of the automobile. The officer was alone, and he arrested both men and placed them in his automobile. He proceeded to examine the warehouse and discovered that a sliding door had been broken open, approximately 70 feet from the automobile of respondents. It was the breaking of this door which had tripped the silent alarm.

When the officer returned to his automobile he was told by respondent Green that the two men had purchased the automobile tires in their car from an unidentified Negro man, who was supposed to meet the respondents at the location where their car was found.

Four additional new automobile tires were found in the trunk of the automobile of respondents. All of the tires had a manufacturer's label still attached to them. Mr. Hill, the employee of the alarm company, and Mr. Robert E. Troutman, Jr., manager of the warehouse, arrived at the scene. Both of them saw the tires in the automobile belonging to respondents, and heard the respondents state that they had purchased the tires from two unidentified Negro men.

Mr. Troutman, the warehouse manager, stated that the warehouse would normally have been closed since Friday afternoon. He was not sure whether any work had been done at the warehouse on Saturday, but he said that only authorized personnel of the warehouse company would have been allowed to enter the warehouse when it was closed, and that they would have had to have clearance from the alarm company. The warehouse was not open on Sunday, and he said that neither of the respondents was an employee of the company or had any authority to enter the warehouse.

Mr. Troutman said that the automobile tires in question were Uniroyal tires. He said that the manufacturer of these tires stored many types of tires in the commercial warehouse. He said:

"That particular warehouse has many lines of tires, so in warehousing we keep up with them by manufacturer's code. I took the manufacturer's code down of all the tires that were in the car."

Mr. Troutman stated that there were tires in the respondent's automobile containing a number of different codes. He then testified:

"I inventoried control Monday after that and, for instance, there was one-inch 33083502.

"Q Now, what is that? That's manufacturer's—

"A (Interposing) Manufacturer's Code. There was one of these tires in their car. There was 34 in our control that were in that warehouse at that time.

"Q And how many were in the warehouse—there were, supposed to be 34—

"A (Interposing) Thirty-four of that particular tire was stored in that warehouse at that time.

"Q All right, and one of those tires was found in that car?

"A Yes, sir."

Mr. Troutman also stated that a number of other tires correlating with other inventory codes were found in the automobile. He then testified:

"Q Now, Mr. Troutman, having done all this, looked at those tires, those ten tires in that automobile, and talked of your inventory list that you've just gone through, and knowing what was in those warehouses, those ten tires in that car belonged to whom?

"A They actually belonged to the Uniroyal Corporation. Cherokee Warehouse is an agent for Uniroyal in this particular case.

"Q They were stored by, for Uniroyal by Cherokee Warehouses in that warehouse, CH 4?

"A Yes, sir."

Although Mr. Troutman was cross-examined extensively, the foregoing, in our opinion, certainly constitutes some evidence for consideration by the jury as to the ownership of the tires in question, and we therefore are not able to agree with the majority opinion of the Court of Criminal Appeals that there was insufficient evidence of the ownership of the tires in question. It is true that Mr. Troutman later testified that he did not personally go to the various racks where the lot numbers were stored to see how many tires of particular lot numbers were missing, but certainly the weight and credibility of his testimony were issues for the jury, and we are unable to say that the evidence preponderates against the verdict of the jury. On appeal from a conviction, the State is entitled to have the appellate court take the strongest legitimate view of the evidence in its favor, and, viewed in that light, we are of the opinion that there was ample evidence of the element of ownership of the tires to sustain the verdict of receiving stolen property.

The offense of receiving stolen property is defined in T.C.A. § 39–4217(A) as follows:

"Every person who shall fraudulently receive or buy any goods over the value of one hundred dollars ($100), feloniously taken or stolen from another, or goods obtained by robbery or burglary, knowing the same to have been so obtained, with the intent to deprive the true owner thereof, shall be guilty of receiving stolen property over the value of one hundred dollars ($100)."

In the present case there was, of course, very strong circumstantial evidence that the respondents had themselves burglarized the warehouse. They were, however, acquitted of this charge. They told the police and other investigating officials that they had purchased the tires from two unidentified Negro men. Respondent Green did not testify or offer any proof, but respondent Pritchett testified that he and Green had purchased the two tires from two Negro men who came by the location where the two respondents had parked their automobile. He said that they had parked at that place in order to take a drink, and that these two persons stated that they were employed at a service station and had bought some tires from their employer. Pritchett testified that he and Green bought the ten tires for a total of forty dollars, and acknowledged that he himself had made inquiry from the two men as to whether the tires were or were not stolen. He had been assured that they were not stolen, according to his testimony.

There is, therefore, evidence in the record from which the jury could have found that the respondents received the property in question knowing it to have been stolen or under circumstances which were sufficient to put them, as reasonable men, upon inquiry which if pursued would have disclosed the information that the tires were stolen. *Kessler v. State*, 220 Tenn. 82, 414 S.W.2d 115 (1967); *Deerfield v. State*, 220 Tenn. 546, 420 S.W.2d 649 (1967).

The Court of Criminal Appeals apparently concluded that there was sufficient evidence to establish all of the other elements of the crime of receiving stolen property, other than the ownership of the ten tires, and our examination of the record leads us to the same conclusion. Indeed, wholly apart from the testimony of the defendant Pritchett, the circumstances were such that the jury would have been entitled to infer knowledge of the respondents that the property in question was stolen, from the fact that they were in possession of the property shortly after the burglary had been discovered and reported. *Gossett v. State*, 224 Tenn. 374, 455 S.W.2d 585 (1970); *Nunley v. State*, 479 S.W.2d 836 (Tenn.Cr. App.1972).

We have examined the assignments of error filed on behalf of the respondent Green after certiorari had been granted in this case. Essentially these are the same contentions which were made by him in the Court of Criminal Appeals and were found by that court to be without merit. Most of

these assignments challenge the sufficiency of the evidence, which we have discussed above, or complain of the cross-examination of the codefendant Pritchett concerning prior convictions.

Our examination of this record does not disclose any reversible error insofar as the respondent Green is concerned.

The judgment of the Court of Criminal Appeals is reversed and the judgment of the trial court is reinstated as to each of the respondents. The costs will be paid by the respondents.