STATE of Tennessee, Appellee,

v.

Donnie Lee MOORE, Frank James Weaver, and Deborah Louise Sovastian, Appellants.

Court of Criminal Appeals of Tennessee, at Knoxville.

Jan. 25, 1980.

Permission to Appeal Denied by Supreme Court April 7, 1980.

William M. Leech, Jr., Atty. Gen., John Zimmermann, Asst. Atty. Gen., Nashville, James Russell Dedrick, Asst. Dist. Atty. Gen., Knoxville, for appellee.

Albert J. Newman, Jr., Knoxville, for Moore.

Daniel J. Goodman, Knoxville, for Weaver and Sovastian.

## OPINION

WALKER, Presiding Judge.

The appellants, Donnie Lee Moore, Frank James Weaver and Deborah Louise Sovastian were jointly tried and convicted in Knox County of second degree burglary of the house of Marie and Bob Jackson. In accordance with the verdict, Moore was sentenced to not less than six nor more than 15 years; Weaver to not less than six nor more than 12 years; and Sovastian to not less

than three nor more than three years in the penitentiary. In the bifurcated trial, evidence was then heard under counts of the indictment charging Moore and Weaver with being habitual criminals and they were both found guilty. Their punishment was enhanced to life imprisonment. All appeal to this court.

The appellants attack the sufficiency of the convicting evidence and also contend that the trial judge erred in denying a motion for judgment of acquittal because the proof failed to establish a burglary of a residence.

The state's proof, which the jury accredited, showed that Marie Jackson, along with her mother Ethel Robinson, left her home to go out to lunch at about 11:45 a. m. on November 8, 1978. They returned to Mrs. Jackson's home shortly after 1:00 p. m. and found a blue Ford Mustang in the driveway. Mrs. Jackson thought that the car belonged to a customer waiting for her to return since she had converted her garage into a drapery shop. However, when someone looked out the shop window, the occupants of the car appeared to be startled and they drove away hurriedly. At trial, both Mrs. Jackson and Mrs. Robinson identified appellants Weaver and Sovastian as the occupants of the blue car. Mrs. Jackson identified appellant Moore as the individual who looked out the shop window.

The locks on two rear doors, which had earlier been intact, were broken. One of the doors opened into a utility room which connected the house to the shop and the other door opened into the dining room of the house. An inspection of the interior revealed that the entire house had been ransacked. Two shotguns, a radio, and some bed linen were found in the back yard.

One of the Jackson's neighbors, Margaret Smith, saw two individuals emerge from the Jackson home. She identified appellant Moore as one of these individuals. One carried a bag and wore gloves.

A description of the car, which bore a temporary tag instead of a license plate, and its occupants was given to the police. Less than 15 minutes later, the appellants and a juvenile companion were stopped within a quarter of a mile from the Jackson home in a blue Mustang which had a temporary license.

Mrs. Jackson and Mrs. Smith were immediately taken by a police officer to the place where the appellants had been stopped. Mrs. Jackson identified the car and the appellants. Mrs. Smith identified Moore as the individual she saw leaving the house.

Appellant Sovastian testified that she and appellant Weaver went to appellant Moore's sister's house around 1:30 p. m. and stayed until 2:00 p. m. She further testified that they were on their way to help a friend fix his car when stopped by the police. Moore's sister testified that the appellants did not leave her house until 2:00 p. m. Appellants Moore and Weaver did not testify.

A guilty verdict resolves all conflicts in the testimony in favor of the state and establishes the state's theory of the case. *Yearwood v. State,* 2 Tenn.Cr.App. 552, 455 S.W.2d 612 (1970). Taking the strongest legitimate view of the evidence in the state's favor, *State v. Pritchett,* 524 S.W.2d 470 (Tenn.1975), we are unable to say that there is insufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Consequently, no error was committed in denying the motion for judgment of acquittal. *State v. Cabbage,* 571 S.W.2d 832 (Tenn.1978). This claim is without merit.

In the appellants' next issue, they claim the trial court erred in allowing the identification testimony of Mrs. Jackson and Mrs. Smith into evidence. They contend that the procedure of taking the women to the scene of the arrest was so suggestive as to violate due process of law. They do not contend that the police did anything to induce a false identification other than conducting this showup procedure. In *Marsh v. State,* 561 S.W.2d 767 (Tenn.Cr. App.1977), we said that: "One-to-one lineups are condemned and their use is highly

suspect." However, we did recognize that imperative circumstances may justify such a procedure. We feel that on-the-scene investigatory confrontations within a reasonable time after the commission of an offense are permissible. In *Bates v. United States*, 132 U.S.App.D.C. 36, 38, 405 F.2d 1104, 1106 (1968), Judge Burger said:

"There is no prohibition against a viewing of a suspect alone in what is called a 'one-man showup' when this occurs near the time of the alleged criminal act; such a course does not tend to bring about misidentification but rather tends under some circumstances to insure accuracy. The rationale underlying this is in some respects not unlike that which the law relies on to make an exception to the hearsay rule, allowing spontaneous utterances a standing which they would not be given if uttered at a later point in time. An early identification is not error. Of course, proof of infirmities and subjective factors, such as hysteria of a witness, can be explored on cross-examination and in argument. Prudent police work would confine these on-the-spot identifications to situations in which possible doubts as to identification needed to be resolved promptly; absent such need the conventional line-up viewing is the appropriate procedure.

.   .   .   .   .

". . . To the contrary, the police action in returning the suspect to the vicinity of the crime for immediate identification in circumstances such as these fosters the desirable objectives of fresh, accurate identification which in some instances may lead to the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing culprit while the trail is fresh."

Likewise, in *Jones v. United States*, 277 A.2d 95 (D.C.App.1971), it was said:

"Whenever a prime suspect can be located at or near the scene of a crime as the result of an on-going, uninterrupted police search, we believe that both the public interest and the interests of justice are best served by an immediate confrontation. We think it is impossible to fix any precise time limit measured by a specific number of minutes from the commission of the crime within which all on-the-scene confrontations must take place. In each case the critical issue is whether there was sufficient proximity of time and place between the offense and the confrontation. [citations omitted] Obviously, the longer the time elapsing between the crime and confrontation the greater the need of the police to justify their action."

See also *Bracken v. State*, 489 S.W.2d 261 (Tenn.Cr.App.1972); *Russell v. State*, 489 S.W.2d 535 (Tenn.Cr.App.1972).

■ We find sufficient proximity between the offense and confrontation in both time and place and sufficient imperative circumstances to justify the procedure. The procedure was proper and this contention is without merit.

■ Next, the appellants claim the trial judge erred in refusing to charge the jury as to third degree burglary. They contend that third degree burglary is a lesser included offense of second degree burglary which should have been charged pursuant to T.C.A. § 40–2518. For the purpose of this assignment of error, we will consider third degree burglary as a lesser included offense of second degree burglary. However, we can find no error because the evidence does not warrant an instruction as to third degree burglary, i. e., burglary of a business house. The appellants base their contention upon the premise that Mrs. Jackson's drapery shop constituted a "business house" and not a "dwelling house." We disagree.

"If a house is used by the occupant or a member of his family as a dwelling, it is the subject of burglary, notwithstanding it may also be used for other purposes, as for a shop, warehouse, store, or office; and in such a case the breaking and entering of any part of the house is a breaking and entering of the dwelling house, although the occupant may not sleep in the particular room broken and entered." 12 C.J.S. Burglary § 19, p. 680; accord, see *Armour v. State*, 22 Tenn. 379 (1842).

The record in the present case reveals that the drapery shop is under the same roof as the house and is connected to the house by an internal passageway. Therefore, the breaking and entry of the shop would still constitute the breaking and entry of a dwelling house.

Since no evidence supported the lesser included offense, the failure to instruct on it was not error. *State v. Mellons*, 557 S.W.2d 497 (Tenn.1977). This contention is without merit.

▮ Also without merit is appellant Moore's contention that the jury's verdict finding him to be a habitual criminal was the result of passion, prejudice and caprice. He claims that his previous criminal offenses were not serious enough to warrant the finding that he was an habitual criminal despite the fact that the proof showed he was an habitual criminal within the meaning of T.C.A. § 40–2801 et seq. The jury's verdict was the only verdict authorized under the Habitual Criminal Act and the jury had no right to disregard the Legislature's determination as to the crimes which are serious enough to merit habitual criminal status. *Wright v. State*, 217 Tenn. 85, 394 S.W.2d 883 (1965); *Janow v. State*, 567 S.W.2d 483 (Tenn.Cr.App.1978).

▮ Likewise without merit is Moore's and Weaver's claim that the trial judge erred in refusing to instruct the jury that they would not be eligible for parole pursuant to T.C.A. § 40–2806 if found by the jury to be habitual criminals. *Marsh v. State*, supra.

▮ Also without merit is appellant Moore's contention that one of his prior convictions while a juvenile should not have been considered for purposes of the habitual criminal law absent proof that he had been properly tried as an adult. The appellant does not claim that he was not properly tried as an adult, only that there is no proof on the matter. "In the absence of some proof on this contention we presume that he was properly bound over for trial as an adult." *Pearson v. State*, 521 S.W.2d 225 (Tenn.1975).

▮ Appellant Weaver also claims that his conviction in the present case cannot trigger the habitual criminal statute because the evidence showed that he was an aider and abettor, not a principal offender. T.C.A. § 39–109 provides that aiders and abettors "shall be deemed principal offenders, and punished as such." Second degree burglary is a sufficient triggering offense under the Habitual Criminal Act. T.C.A. § 40–2803, § 40–2712. Therefore, appellant Weaver's conviction was an appropriate triggering offense under the Habitual Criminal Act. This contention is without merit.

▮ Also without merit is the contention that convictions may not be counted as separate convictions under the Habitual Criminal Act when they are obtained at the same time as the result of plea bargaining. *Pearson v. State*, supra; *Hobby v. State*, 499 S.W.2d 956 (Tenn.Cr.App.1973).

▮ In the last issue for review, appellant Sovastian contends that the trial judge erred in denying her petition for a suspended sentence. During the hearing on the petition, the appellant was cross-examined concerning whether she had aided the other two appellants in an escape from the county jail subsequent to the trial. The appellant chose to exercise her Fifth Amendment right against self-incrimination and the trial judge considered this action in denying the petition. The burden of proving suitability for probation was on the appellant. *Frazier v. State*, 556 S.W.2d 239 (Tenn.Cr.App.1977). Having decided not to fully inform the judge of her actions subsequent to trial, the appellant cannot legitimately claim that she has carried her burden of proof. We find no abuse of discretion in the trial judge's action. *State v. Grear*, 568 S.W.2d 285 (Tenn.1978).

All issues for review are without merit.

Affirmed.

DUNCAN and CORNELIUS, JJ., concur.