**STATE of Tennessee, Appellee,**

v.

**Robert Mark MOORE, Appellant.**

Court of Criminal Appeals of Tennessee.

Jan. 26, 1982.

William M. Leech, Jr., Atty. Gen., Gordon W. Smith, Asst. Atty. Gen., Nashville, Ronald A. Webster, Dist. Atty. Gen., Edward E.

Wilson, Asst. Dist. Atty. Gen., Knoxville, for appellee.

Ray E. Cate, Knoxville, for appellant.

## OPINION

CORNELIUS, Judge.

Robert Mark Moore appeals his conviction for the "Sale of Hydromophone, a Schedule II Controlled Substance", with his punishment having been fixed at not less than four years nor more than five years in the State Penitentiary. He presents seven issues for review. (His co-defendant's, Wiser, case is not before this Court.) For the reasons hereafter stated, the judgment below is reversed and remanded for a new trial.

Appellant's last issue will be considered first as it questions the sufficiency of the convicting evidence. A brief review will be made of the evidence presented to the jury.

On October 30, 1979, Michael S. Cunningham was an employee of the Knox County Sheriff's Office attached to the Metro Narcotic Squad as an undercover agent. At approximately 10:00 a. m. he was dispatched by a Captain Stan Bullen to meet with a John Moody at the Botany Center on Oak Ridge Highway. Moody was to contact a man who could arrange the purchase of the drug Dilaudid. Cunningham made his contact and a second meeting was arranged for around noon.

Cunningham returned to the Botany Center the second time wired with a radio transmitter and two thousand dollars in twenty dollar bills. He again met Moody who was accompanied by the defendant Robert Mark Moore. Cunningham was represented to Moore as a big dealer in marijuana who would give him a good deal on marijuana in exchange for an introduction to his friends who had the dilaudid. In the conversation Moore mentioned that the people with the dilaudid were from out of town and did not know too much about Knoxville, "that him and another friend of his were trying to help them get rid of this dope." Moore and Cunningham got in Cunningham's automobile and started to the Hyatt Regency Hotel. Along the way they stopped so Moore could make a telephone call to his connection. He reported his friend would meet them at the fountain at the hotel.

At the Hyatt Regency Cunningham and Moore met Michael Dennis Wiser, the co-defendant. At the fountain Wiser said the price for the dilaudid was nineteen hundred dollars for one hundred tablets. Wiser also told them that when they went to the room he was going to act as if Cunningham was an old friend. The three of them went to, and entered, Room 471 of the Hyatt Regency occupied by Freddie Franklyn Johnson and Shelley Ann Johnson, co-indictees. (The Johnsons did not participate in this trial.)

Cunningham, Wiser, Moore and Johnson discussed price and settled on Cunningham paying nineteen hundred dollars as stated by Wiser rather than eighteen hundred mentioned by Johnson. Mrs. Johnson, who had just entered from the bathroom, described the drug. Cunningham was asked if he wished to try one but declined. Moore, in accordance with an earlier offer, agreed to "run one up". This was done by intravenous injection. During the injection procedure the tablets were counted out and placed on the top of the television set by Mrs. Johnson. After his injection and report on the drug, Moore took over the task of placing the pills in a 35 mm film canister. Cunningham began counting out his money to Mrs. Johnson.

The counting of the money by Cunningham was the signal for Captain Bullen, Detectives Johnson and Jones to come into the room. During the confusion Moore with the canister in hand was able to get out of the room. He got to the outside balcony and dropped to the outside parking area. He fell onto a grate and dropped most of the pills into the space below. A police officer was close at hand and took him in custody. Some eighty tablets were recovered.

The defense proof, while not accredited by the jury's verdict, was that Wiser and

Moore were friends with a common addiction problem. They had been together in a Methadone maintenance program at a Knoxville clinic. Wiser had been dropped from the program because of a violation and had been away from the Knoxville area. He had met the Johnsons in Nashville and traveled with them for several days freely using from a large supply of stolen dilaudid. Upon arriving in Knoxville on October 29th, Wiser contacted Moore, who lived in Sevierville, suggesting he come to the Hyatt and get in on the good deal. Wiser had told Moore that the Johnsons were selling the tablets at a relatively low price. Moore could not visit the hotel on the 29th, but left open the possibility of coming by the next morning after visiting the methadone clinic.

Moore's proof established that he had purchased marijuana from John Moody for approximately three years. Before October 30, 1979, Moody had been calling Moore some four or five times a week claiming to be sick and wanting to know where he could find some drugs. By coincidence, on October 29th, Moore received a call from Moody shortly after Wiser's. He told Moody that he might get some from the men at the Hyatt. Moore received another call from Moody on the 30th wanting to buy some dilaudid. He called Moody from the clinic and arranged to meet him at the Botany Center to take him to the Hyatt to buy pills, "to get him off my back." Moore testified that when he called Wiser at the Hyatt, he told Wiser he had a friend with him who might buy some of the pills if they still had them. It was Moore's position that he was in the deal in hopes of being able to shoot up a pill or two, that the transaction was between Cunningham and the Johnsons.

The facts of this case are governed by the well established rule that a guilty verdict approved by the trial court resolves all conflicts in the testimony in favor of the State and establishes the State's theory of the case. *State v. Moore*, 596 S.W.2d 841, 843 (Tenn.Cr.App.1980) permission to appeal denied 1980. Taking the strongest legitimate view of the evidence in the State's favor,

*State v. Pritchett*, 524 S.W.2d 470, 474 (Tenn.1975), there is sufficient direct and circumstantial evidence to support the conclusion that Moore was an aider and abettor to the sale of the dilaudid and subject to the same extent as the principle offenders. T.C.A. § 39–109. It follows that this Court is unable to find that the evidence submitted to the jury was insufficient to support the finding by the trier of fact of guilty beyond a reasonable doubt. Rule 13(e), Tennessee Rules of Appellate Procedure: *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; *State v. Patton*, 593 S.W.2d 913, 916–17 (Tenn.1979).

Moore's remaining issues, one through six, are interlocking and relate fundamentally to trial procedure. When entrapment is suspected, what must the defense do to take advantage of the defense offered by *State v. Jones*, 598 S.W.2d 209 (Tenn.1980)? The trial court was of the opinion the defense had to admit participation in the illegal sale of the drugs as a predicate to examining the State's witnesses in regard to the elements of entrapment. Of course, the law is clear that the trial court has a wide latitude and large discretion in control of cross-examination of witnesses, and his exercise of such discretion will not be interfered with except in case of plain abuse of it. *State v. Fowler*, 213 Tenn. 239, 373 S.W.2d 460, 466 (1963); *Harris v. State*, 534 S.W.2d 868, 871 (Tenn.Cr.App.1975) cert. denied 1976. However, if the trial court's legal premise is in error so may be its discretion.

*State v. Jones*, supra, at page 220, states that "entrapment is an affirmative *defense* which may be raised upon a plea of not guilty." The statement that entrapment is in the nature of a plea of confession and avoidance is illustrated dictum. It is not a mandate for a confession of guilt at the beginning of the criminal prosecution. The *Jones* opinion, at page 221, states that "prior to submission to the jury, the trial judge may require that he (appellant) elect whether he chooses to have the jury believe he did not commit the crime or was entrapped into committing it." It is difficult

to see how a trial lawyer can effectively advise a defendant in regard to this election without testing the prosecution's evidence by cross-examination. The State's proof in chief could be so weak that the defense would choose not to confess to participation and then incur the burden of avoiding a conviction by establishing entrapment.

Wharton's Criminal Procedure, 12th Edition, Charles E. Torcia, Vol. 2, Section 343, at page 257, has the following statement:

"A plea of not guilty is 'a denial of every material allegation in the indictment or information upon which the defendant is to be tried.' Ordinarily, after such a plea, 'the defendant is entitled to a reasonable time in which to prepare for trial.'

Absent a statute providing otherwise, facts tending to establish a defense may be given in evidence under a plea of not guilty. Thus, evidence of a defense, such as entrapment, or alibi, may be introduced under a plea of not guilty; although, in the case of alibi, the defendant may be required to give notice to the prosecution of his intent to raise such defense.

The court, in its discretion, may allow a plea of not guilty to be withdrawn for the purpose of substituting a different plea."

■ Rule 12, Rules of Criminal Procedure, does not require an advanced notice of a defense of entrapment.

In order to further consider the trial procedure question, it is necessary to look to the teachings of the federal jurisdictions where the entrapment defense has had a longer existence.

The bed rock of the federal entrapment cases is *Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932), a case under the National Prohibition Act. The court plainly announced that the *defense* of entrapment could be raised under a plea of not guilty and did not need to be plead in bar. The defense is available because the government cannot be permitted to contend that the defendant is guilty of a crime in which the government officials are the instigators of his conduct. See 53 S.Ct. at 216[6].

The Supreme Court in *Sorrells,* supra, also considered the argument that if the defense is (in such manner) available it would lead to the introduction of issues of a collateral character relating to the activities of the official of the government and to the conduct and purposes of the defendant previous to the alleged offense. The Court answered the argument that the government in such a case is in no position to object to evidence of the activities of its representatives in relation to the accused, and if the defendant seeks acquittal by reason of entrapment he cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing upon the issue. If in consequence he suffers a disadvantage he has brought it upon himself by reason of the nature of the defense." See 53 S.Ct. at 216[5]. Also see *Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958).

In *Kadis v. United States,* 373 F.2d 370, 374 (U.S. 1st Cir. 1967) the court stated, "If the defendant shows, through government witnesses or otherwise, some indication that a government agent corrupted him, the burden of disproving entrapment will be on the government; but such showing is not made simply by evidence of a solicitation." This remark would indicate that the questioning of the government witnesses on facts tending to show entrapment would be relevant and proper under a not guilty plea.[1]

In *United States v. Jones,* 575 F.2d 81, 83 and 84 (U.S. 6th Cir.), the defense rested without submitting any evidence. The court in answering entrapment defense, stated "If the defense raises the issue by evidence either in the government's case in chief, or in the defense, the burden of proof is on the government to prove beyond a reasonable doubt that the defendant had a predisposition to commit the crime.

---

1. See extensive cross-examination of all government witnesses in *United States v. Pool,*

660 F.2d 547 (U.S. 5th Cir. 1981).

In *United States v. Demma*, 523 F.2d 981, 982 (U.S. 9th Cir. 1975), nine judges participating), the Court held: "Defendant may assert entrapment without being required to concede that he committed the crime charged or any of its elements." The court rejected its earlier *Eastman* rule for several reasons. The third reason being that the inconsistency theory itself if seriously inform. See *Demma*, supra, p. 982, citing *Sorrells*, supra at 53 S.Ct. at 216. The court said (a) defense counsel may and indeed should argue to the jury that (1) the Government has not proved beyond a reasonable doubt that the defendant committed the crime charged, and (2) if the Government has so proved, then the Government has not proved beyond a reasonable doubt that the acts charged were non-entrapped. It said, these arguments entail no factual inconsistency, they are merely garden-variety alternative contentions.

In *United States v. Burkley*, 591 F.2d 903, 911 (U.S.D.C.1978) cert. denied 1979, 440 U.S. 966, 99 S.Ct. 1516, 59 L.Ed.2d 782, the court comments: It remains true, however, that while predisposition is dispositive, government inducement is not irrelevant in entrapment cases.

After reviewing the authorities from the aforementioned federal districts and using their reasoning to interpret our case of *Jones v. State*, supra, we find that appellant was erroneously denied a proper latitude in cross-examining the State's witnesses and to otherwise attempt to raise his defense of entrapment. For this reason the judgment of the trial court is reversed and the case remanded for a new trial.

As to the missing witness, the prosecuting attorneys and the trial court should take notice of Item IV, on page 224, of the opinion of *State v. Jones*, supra.

DAUGHTREY, J., and ED E. WILLIAMS, III, Special Judge, concur.

