IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 20, 2002

## STATE OF TENNESSEE v. RANDOLPH SCOTT JENNINGS

**Appeal from the Criminal Court for Hamilton County**
**No. 229104      Douglas A. Meyer, Judge**

_____

**No. E2001-02118-CCA-R3-CD**
**December 6, 2002**
_____

Randolph Scott Jennings appeals from his Hamilton County conviction of aggravated robbery.  He was found guilty by a jury of his peers and sentenced by the trial court to a seventeen-year, Range II term in the Department of Correction.  In this direct appeal, he alleges error in the trial court's (1) denial of his motion to suppress evidence of a "showup" identification and admission of the subsequent in-court identification of him as the perpetrator of the crime, (2) denial of motions to compel production of clothing the defendant wore at the time of his arrest, or alternatively, to dismiss the charged based upon the state's inability to produce the clothing, and (3) application of enhancement factors, imposition of a Range II sentence, and order of consecutive sentencing.  Because we are unpersuaded of error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which GARY R. WADE, P.J. and ROBERT W. WEDEMEYER, J., joined.

Ardena Garth, District Public Defender, and Donna Robinson Miller, Assistant District Public Defender, Chattanooga, Tennessee, for the Appellant, Randolph Scott Jennings.

Paul G. Summers, Attorney General & Reporter; David H. Findley, Assistant Attorney General; William H. Cox, III, District Attorney General; and Rodney C. Strong and Parke Masterson, Assistant District Attorneys General, for the Appellee, State of Tennessee.

### OPINION

At approximately noon on April 9, 1999, Leah Daniel was getting out of her car outside her place of employment in downtown Chattanooga when she was approached by a man who pointed a gun at her and demanded her purse.  The man repeatedly demanded that she surrender any money inside her purse.  She was only able to produce three dollars, which the man took along with Ms. Daniel's engraved watch.  The man fled on foot.

Ms. Daniel summoned the police, who quickly responded to the area. Officers spotted the defendant, Randolph Scott Jennings,[1] running and gave chase. After chasing the defendant through a chicken processing facility, the authorities apprehended the defendant. A watch bearing the same inscription as the one taken from the victim was found on the defendant's person at the time of his apprehension.

The defendant was transported back to the scene of the crime within twenty minutes of the robbery. The victim was shown the watch that had been recovered from the defendant, and the victim identified it as hers. The victim was offered the opportunity to view the defendant to determine whether he was the individual who had robbed her. While the defendant was seated in the rear of a police car, the victim viewed him and positively identified him as the perpetrator. The victim then told the detective in charge about the three dollars taken in the robbery, whereupon the detective searched the defendant and found three one-dollar bills on his person.

At trial, the defendant did not present evidence. However, he attempted to discredit the state's identification evidence by highlighting the varying accounts of the attire of the person who robbed the victim and those given by police officers about the defendant. For example, the victim testified that the perpetrator was wearing a light blue shirt. A patrolman with the Chattanooga Police Department testified that the broadcast over the police radio was of a suspect wearing a blue shirt, blue jeans, and possibly a ball cap. This officer testified that he chased the defendant, who was wearing a faded red sweatshirt turned inside out but not a blue shirt or a ball cap. Another officer who chased the defendant testified that he was wearing non-specific dark clothing and may have been wearing a hat. The detective assigned to the case testified that although he could not actually recall what the defendant was wearing, he had written in his notes that the defendant was attired in a gray shirt and blue pants. He acknowledged that the description that had been broadcast on the radio shortly after the crime was that of an individual wearing a blue shirt and blue pants.

The parties stipulated that the clothing the defendant wore at the time of his arrest had not been located.

The jury rejected the defendant's challenge to the identification proof and was persuaded by the state's proof of the defendant's guilt of aggravated robbery.

At the sentencing hearing, the trial court summarily found the existence of several enhancement factors, rejected all mitigating factors, classified the defendant as a Range II offender, and imposed an incarcerative sentence of seventeen years to be served consecutively to the defendant's sentence in another case.

---

[1] The defendant was indicted as "Randolph Scott Allison alias Randolph Scott Jennings alias Red." In a pretrial motion, the defendant sought amendment of the indictment to reflect his alleged "true name," Randolph Scott Jennings. Although the record is not a model of clarity on the issue, it appears that the trial court granted the motion. Thus, we refer to the defendant by the surname Jennings.

This appeal followed.

## I

Prior to trial, the defendant filed a motion to suppress evidence of the victim's on-the-scene identification of him as the perpetrator of the crime. The lower court denied the motion, and the evidence was admitted along with the victim's in-court identification of the defendant. The defendant claims on appeal that the "showup" was so suggestive as to violate his due process rights and that the subsequent in-court identification was tainted by the earlier showup identification.

An identification procedure that is so impermissibly suggestive "as to give rise to a very substantial likelihood of irreparable misidentification" violates due process. *Simmons v. United States*, 390 U.S. 377, 384, 88 S. Ct. 967, 971 (1968). Although it may be suggestive, an identification may satisfy due process as reliable and admissible if the totality of the circumstances so warrants. *See State v. Brown*, 795 S.W.2d 689, 694 (Tenn. Crim. App. 1990). Five factors are to be considered when evaluating the propriety of the identification process. *Neil v. Biggers*, 409 U.S. 188, 199, 93 S. Ct. 375, 382 (1972); *Bennett v. State*, 530 S.W.2d 511, 514 (Tenn. 1975). They are: (1) the opportunity the witness had to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty of the witness at the confrontation; and (5) the time between the crime and the confrontation. *Neil*, 409 U.S. at 199; *Brown*, 795 S.W.2d at 694.

A showup is a form of identification of a defendant that is, by its nature, inherently suggestive. *State v. Thomas*, 780 S.W.2d 379, 381 (Tenn. Crim. App. 1989). The use of showups to establish the identification of a person suspected of committing a criminal offense has been repeatedly condemned absent special circumstances. *See, e.g., Stovall v. Denno*, 388 U.S. 293, 87 S. Ct. 1967 (1967); *Wadley v. State*, 634 S.W.2d 658 (Tenn. Crim. App. 1982); *State v. Beal*, 614 S.W.2d 77 (Tenn. Crim. App. 1981). A showup may be warranted if imperative circumstances necessitate this mode of identification. *Stovall,* 388 U.S. 293, 87 S. Ct. 1967; *Forbes v. State*, 559 S.W.2d 318 (Tenn. 1977); *State v. Moore*, 596 S.W.2d 841 (Tenn. Crim. App. 1980). A showup may likewise be warranted if it occurs as an on-the-scene investigatory procedure shortly after the commission of the crime. *Thomas*, 780 S.W.2d at 381; *Johnson v. State*, 596 S.W.2d 97 (Tenn. Crim. App. 1979); *Bracken v. State*, 489 S.W.2d 261 (Tenn. Crim. App. 1972); *Russell v. State*, 489 S.W.2d 535 (Tenn. Crim. App. 1972).

We begin our analysis by noting that the defendant, while setting forth in his brief the facts of his case and the pertinent law, has failed to explain how that law applies to the facts of his case. In this respect, the defendant's brief falls short under the Rules of Appellate Procedure and the rules of this court. *See* Tenn. R. App. P. 27(a)(7) (standards for argument portion of appellant's brief); Tenn. R. Ct. Crim. App. 10(a) (briefs must substantially conform to the requirements of the Rules of Appellate Procedure). A defendant who fails to brief issues fully as required by the rules of appellate practice risks waiver of the inadequately treated issues. Tenn. R. Ct. Crim. App. 10(b). The defendant in this case has come precipitously close to misstepping into the crevice of waiver.

Thus unaided by the defendant's brief in determining the merits of the issue before us, we have examined the facts of this case in light of the relevant law. Upon doing so, we hold that the showup conducted in this case was not so inherently suggestive that the admission of evidence of it violated the defendant's due process rights.

The five *Neil/Brown* factors discussed above weigh favorably for the state. The evidence demonstrates that the victim estimated the time during which she was confronted by the defendant to be about five minutes during daylight hours. *Brown*, 795 S.W.2d at 694 (the opportunity the witness had to view the criminal at the time of the crime). There is no indication the victim's attention was distracted. *Id.* (the witness' degree of attention). Although it is not possible to verify the accuracy of the victim's description of the perpetrator's shirt, other aspects of her physical description of the defendant and his clothing are corroborated by the evidence.[2] *Id.* (the accuracy of the witness' prior description of the criminal). The victim was positive in her identification of the defendant as the perpetrator. *Id.* (the level of certainty of the witness at the confrontation). Only about twenty minutes elapsed between the crime and the showup identification procedure. *Id.* (the time between the crime and the confrontation). Upon consideration of these factors and the totality of the factual circumstances of the case, we are persuaded that a showup was warranted and was not so inherently suggestive as to deprive the defendant of his due process rights.

Having concluded that the showup identification procedure was not violative of the defendant's due process rights, we likewise conclude that evidence of the identification made was properly admitted. Moreover, finding no fault with the showup procedure, we decline to find tainted the subsequent in-court identification of the defendant by the victim. Thus, the defendant is not entitled to relief on this issue.

## II

The defendant next challenges the trial court's denial of his motions to compel production of the clothing he wore at the time of the arrest, or alternatively, to dismiss the charges. By all accounts (and by stipulation of the parties entered into evidence at trial), the defendant's clothing could not be located. It appears from the record that the state made unsuccessful efforts prior to trial to locate the clothing.[3] Because the clothing was lost and efforts had been made to locate it, we are at a loss to understand and the defendant has not explained how an order to compel production would have been of any positive effect. Thus, we will consider only the issue whether the charges should have been dismissed in the absence of the clothing.

---

[2]Although there was some variation in the various descriptions of the perpetrator's and the defendant's shirt, accounts were consistent that the perpetrator and defendant was a tall, large, black male.

[3]The defendant has not alleged that the state was purposefully concealing the clothing or otherwise proceeding in bad faith.

We decline to surmise that a premature disposition of the clothes may have been occasioned by the defendant's flight through the chicken processing plant.

In determining whether a trial may be conducted in the absence of certain evidence, the question, really, is whether the defendant's trial was fundamentally unfair in the absence of the evidence in question. *See State v. Ferguson*, 2 S.W.3d 912, 914 (Tenn. 1999). Tennessee's constitutional due process protections in this regard are more extensive than those of the federal Constitution. *Id*. at 916-17.

The first step in the Tennessee analysis is to determine whether the state has a duty to preserve the evidence. *Id*. at 917. Before the duty will arise, the evidence must be of such character that it "might be expected to play a significant role in the suspect's defense." *Id*. To determine whether the evidence meets this standard, the court must determine that the evidence's exculpatory value was apparent before the evidence was lost, and the evidence must be of such a character that the defendant cannot reasonably be expected to obtain equivalent evidence through other means. *Id.*

If the examining court determines that the state had a duty to preserve the evidence, then it must go on to consider three factors in determining the consequence that must follow the state's breach. *Id.* First, the court must scrutinize the degree of negligence involved. *Id.* Second, the court must analyze the significance of the evidence, in light of its probative value and the reliability of any similar evidence that exists. *Id.* Third, the court must view the sufficiency of the trial evidence to support the conviction. *Id.* Remedies may include dismissal of the charges or a special jury instruction, but the remedy ultimately must be determined based upon the facts and circumstances of the individual case. *Id.*

We begin with the task of determining whether the state had a duty to preserve the defendant's clothing. The evidence reflects that two police officers observed the defendant wearing a shirt which differed in color from that specified by the victim immediately after the crime. There is no evidence that the defendant made inculpatory statements, so it would be logical for state actors to assume that identification would be a key issue at trial. Thus, the potential exculpatory value of the evidence should have been apparent. *See id.* Furthermore, the evidence is of such a nature that comparable evidence is not available through other means. *See id.* Thus, we believe the state had a duty to preserve the evidence. *See id.* Further inquiry is therefore warranted. *Id.*

The defendant does not allege that the state was guilty of greater than simple negligence in the loss of the evidence, and we will not presume more, absent proof. *See id.* The loss of the evidence is significant in the sense that if exculpatory, it would be directly probative of the defendant's identity issue, and further, substitute evidence is not available. *See id.* However, the sufficiency of the other evidence employed by the state is overwhelming. *See id.* The defendant fled the scene, attempted to evade law enforcement officers who chased him, and discarded a gun during the process of his flight. *See State v. Kendricks,* 947 S.W.2d 875, 886 (Tenn. Crim. App. 1996) (flight instruction allowing inference of guilt was proper where evidence demonstrated that defendant fled crime scene and discarded weapon out car window). When apprehended mere minutes after the crime, the defendant was found in possession of the victim's stolen property. *See Raynor v. State*, 1 Tenn. Crim. App. 556, 560, 447 S.W.2d 391, 393 (1969) (inference may be drawn

from robbery defendant's recent, unexplained possession of stolen property that defendant was the individual who stole the property). The victim was positive about her identification of the defendant, and there was evidence that her description of the perpetrator's physical characteristics and clothing other than his shirt was consistent with the defendant's appearance and other clothing. Even if the defendant had been able to show that the shirt he wore at the time of his arrest did not match the victim's description of it, we have serious reservations in holding that this evidence would likely have affected the verdict in the defendant's favor.

Upon balancing these factors, we conclude that the defendant's due process rights were not violated by the trial court's ruling denying dismissal of the case based upon the state's inability to produce the defendant's clothing. Thus, the defendant is not entitled to relief.

**III**

The defendant's final issue concerns the seventeen-year, Range II sentence he received for his crime. He claims that the lower court improperly applied three enhancement factors and sentenced him as a Range II offender without offering proof of his prior convictions. He likewise challenges the imposition of consecutive sentencing.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the determinations made by the trial court are correct. *See* Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). Likewise, the trial court has an affirmative duty to state on the record, either orally or in writing, which enhancement and mitigating factors it found and its findings of fact. Tenn. Code Ann. §§ 40-35-209(c), - 210(f) (Supp. 2000); *State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998); *State v. Russell*, 10 S.W.3d 270, 278 (Tenn. Crim. App. 1999). In this case, the trial court failed to memorialize his consideration of the relevant factors or to make findings of fact on the record. Accordingly, we afford no presumptive correctness to its sentencing determination and review its sentencing determination *de novo*.

First, we must determine the defendant's proper range classification. The defendant maintains that the state offered no proof of his prior convictions, and therefore he was improperly sentenced as a Range II offender. Inexplicably, he maintains that the record is devoid of so much as a presentence report indicating prior convictions, even though the original presentence report is attached as an exhibit to the transcript of the sentencing hearing and has been authenticated by the trial judge. This court has held that information in a presentence report is reliable hearsay which may be admitted if the opposing party is offered the opportunity to rebut the same. *State v. Baker*, 956 S.W.2d 8, 17 (Tenn. Crim. App. 1997); *see State v. Richardson*, 875 S.W.2d 671, 677 (Tenn. Crim. App. 1993). In this case, the defendant made no objection at the sentencing hearing to the evidence of his prior convictions as contained in the presentence report. Moreover, two of the defendant's

prior convictions listed in the presentence report, robbery and aggravated robbery, qualify him for Range II sentencing. *See* Tenn. Code Ann. § 40-35-106(a)(1) (1997).

The defendant's crime in the present case is a Class B felony. *See id.* § 39-13-402(b) (1997). As a Range II offender, the defendant is eligible to receive a sentence of twelve to twenty years for a Class B crime. *Id.* § 40-35-112(b)(2) (1997). He received a sentence of seventeen years, slightly above the midpoint of this range.

In determining whether the lower court sentenced the defendant to a too-lengthy term, we must begin with the presumption that the defendant is entitled to a minimum term. *See id.* § 40-35-210(c) (Supp. 2001). If, however, there are enhancement factors, we may increase the sentence beyond the minimum as warranted by those factors. *Id.* § 40-35-210(d). Should there also be mitigating factors, we may then reduce the sentence as appropriate for those factors. *Id.* at (e).

The state alleged at the hearing that the following enhancement factors from Code section 40-35-114 applied to the defendant:

(1)   The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
. . .

(8)   The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community;

(9)   The defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense;

(10)  The defendant had no hesitation about committing a crime when the risk to human life was high;
. . .

(13)  The felony was committed while on any of the following forms of release status if such release is from a prior felony conviction:
(A)   Bail, if the defendant is ultimately convicted of such prior felony;
(B)   Parole;
(C)   Probation;
(D)   Work release; or
(E)   Any other type of release into the community under the direct or indirect supervision of the department of correction or local governmental authority[.]

*Id.* § 40-35-114(1), (8), (9), (10), (13) (Supp. 2001).

The record via the presentence report readily supports a finding of additional criminal convictions and behavior in addition to those necessary to establish the defendant's Range II classification. In addition to his Range II qualifying convictions of robbery and aggravated robbery,

the defendant has a cocaine drug conviction. He also has a history of illicit drug use. Thus, enhancement factor (1) applies, and the defendant does not contest the application of this factor.

The defendant likewise does not contest the application of enhancement factor (8) relative to his previous unwillingness to comply with a sentence involving community release. The record indicates that he committed an offense in 1995 during the term of a three-year sentence for a previous crime of which he was convicted in 1994. Thus, the defendant's concession is in order.

The defendant claims that factor (9) regarding employment of a firearm should not be applied to him because this is an element of the conviction offense. We agree. *See* Tenn. Code Ann. § 40-35-114 (Supp. 2001) (statutory enhancement factors may be applied if they are not essential elements of the offense).

The defendant likewise takes issue with the application of factor (10) pertaining to lack of hesitation to commit an offense when the risk to human life is high. On appeal, the state has declined the opportunity to advocate the application of this factor. Although the defendant employed a firearm in the commission of the offense, its employment was an element of the offense. We believe the high risk to human life inherent in the use of a deadly weapon has already been taken into account by the deadly weapon element of the offense. *See, e.g., State v. Nix*, 922 S.W.2d 894, 903 (Tenn. Crim. App. 1995); *State v. Hill*, 885 S.W.2d 357, 363 (Tenn. Crim. App. 1994).

The defendant argues against the application of factor (13), relative to his commission of the offense while on parole from a felony conviction. Again, the defendant bases his argument on the purported lack of proof of any prior convictions. This argument is untenable based upon the presentence report containing evidence that the defendant committed the instant offense while on parole from a felony conviction, a fact to which the defendant registered no objection at the sentencing hearing. In light of this evidence, we believe that factor (13) relative to commission of the offense while on parole is appropriate.

The defendant has not, on appeal, commended any mitigating factors to us for consideration. At the sentencing hearing, he argued that the court should consider his favorable background as evidenced by his tenth-grade education, his family support, and his employment at the time of the offense. Given the defendant's criminal history, we fail to see any mitigating quality in any meager efforts the defendant has made to be a productive member of society. Moreover, given his criminal background, he is fortunate to the extent that he receives any family support.

Taking all of these factors into consideration along with the relevant principles of sentencing, we must conclude that the lower court did not err in reaching a seventeen-year sentence for the defendant's crime. The three applicable enhancement factors all weigh heavily and are in stark contrast to the lack of mitigating evidence.

Finally, we must reject the defendant's claim that he was improperly consecutively sentenced. Once again, he argues that the state failed to offer any proof of his prior convictions. The

record reflects otherwise. The defendant was on parole for a felony at the time he committed the felony in this case, and consecutive sentencing is mandatory. *See* Tenn. R. Crim. P. 32(c)(3)(A).

For the reasons outlined above, we conclude that the defendant is not entitled to relief on any of his appellate issues. Therefore, we affirm the judgment of the trial court.

_____

JAMES CURWOOD WITT, JR., JUDGE