STATE of Tennessee, Appellee,

v.

David A. MAYO, Appellant.

Court of Criminal Appeals of Tennessee, at Knoxville.

Feb. 23, 1987.

812

W.J. Michael Cody, Atty. Gen., Jane W. Young, Asst. Atty. Gen., Nashville, Stanley A. Kweller, Asst. Dist. Atty. Gen., Blountville, for appellee.

James H. Beeler (at trial), Daniel P. Street (on appeal), Kingsport, for appellant.

## OPINION

ARTHUR C. FAQUIN, Jr., Special Judge.

The Appellant, David A. Mayo, along with Carl G. Laney and Charles L. Steffey, was indicted for burglarizing the dwelling house of Brenda Calloway and the automobile of Helen Parris. Mayo was also indicted for reckless driving and for carrying arms. All four offenses occurred on the same night in Kingsport, Tennessee.

In a separate trial, Mayo was convicted of burglary in the first degree and of auto burglary and was sentenced to consecutive terms of six years and four years, respectively. In the same trial, he was also convicted of reckless driving and of carrying arms and received concurrent sentences of two days for each of these offenses, to be served concurrently with the burglary sentences. His application for probation was denied.

He has presented nine issues for our review.

Whether the evidence adduced at trial was sufficient to sustain the jury's verdict. (Appellant's Issues I, II and III)

In his first three issues, Mayo contends that the evidence adduced at the trial is insufficient to support the jury verdict, that the verdict is contrary to the law and the evidence, and that the evidence preponderates in favor of his innocence and against his guilt.

In support of these allegations, he maintains that Ms. Rhoten's trial testimony was substantially different from her testimony at the preliminary hearing, and the fact that this discrepancy existed cast suspicion on her credibility and resulted in insufficient evidence to convict him. He also argues that the issue of her credibility was not presented to the jury, because, due to a faulty tape recorder, the jury did not hear her prior inconsistent testimony. In addition, he contends that no evidence of the first degree burglary was introduced at the trial and very little evidence that he was an active participant in either burglary was presented.

The complained-of discrepancy resulted from Ms. Rhoten's testimony at the trial that she saw three men on the parking lot where her mother's automobile was burglarized, while at the preliminary hearing she had testified to seeing two men on the lot.

When defense counsel heard Ms. Rhoten's trial testimony that she saw three men on the lot, he had a subpoena issued to have the tapes of the preliminary hearing brought into court. He also cross-examined Ms. Rhoten about her prior inconsistent testimony at that hearing, and she qualifiedly denied that she had given it.

Later, at a recess after the tapes had arrived, defense counsel attempted to listen to the tape of Ms. Rhoten's testimony, but he discovered that it was "so quiet as to be virtually" inaudible. Believing that the tape was defective, he advised the court that they did not want to present evidence on it at that time.

Except for questioning Mrs. Parris and David Mayo about Ms. Rhoten's prior in-

consistent testimony at the preliminary hearing, no other attempt was made to bring this testimony before the jury.

Sometime after the completion of the trial, however, it was discovered that the tape was not defective, but the tape player, which was the only one available at the time counsel attempted to listen to the tape, was. The tape itself proved to be clearly audible.

Upon this discovery, a transcript of Ms. Rhoten's preliminary-hearing testimony was prepared from the tape and was made an exhibit to the hearing on the motion for new trial.

An affidavit from Ms. Rhoten, explaining the inconsistencies in her testimony, was also made an exhibit to that hearing.

In her affidavit, Ms. Rhoten gave several reasons for her failure to testify at the preliminary hearing that she saw three men on the parking lot. One was that she was examined by a different assistant district attorney general at the trial than at the preliminary hearing, and their methods of questioning her were different. Another, and apparently the principal one, was that she was never asked at the preliminary hearing whether she saw three men. She said that if she had been asked that question, she would have answered it "yes."

According to the record, Ms. Rhoten was examined at the preliminary hearing by a different assistant district attorney general than the one who examined her at the trial. And although she was questioned at the preliminary hearing by the assistant district attorney general who was present there and by two defense attorneys, she was not asked whether she saw three men on the lot. Nor was she asked how many men she saw on the lot or whether she saw anyone in the Oldsmobile before the man entered it. However, she was asked whether she saw two men on the lot or just one, and her answer, instead of being direct, explained that she saw one man squatting between two cars in front of "A" building and another man getting into the Oldsmobile and pulling the sun visor down. Even though she repeated this explanation,

with slight variations, several times during her testimony at the hearing and had several opportunities to change it, she did not expand on it by testifying whether she did nor did not see a third man on the lot or in the Oldsmobile, and she was not questioned along these lines by any of the attorneys.

After painstakingly listening to the arguments on the motion for new trial and reviewing the transcript of Ms. Rhoten's preliminary-hearing testimony and her affidavit, the trial judge, who had seen and heard the witnesses testify at the trial, ruled that he believed that Ms. Rhoten was truthful, and he found that no prejudice had been shown that would cause the granting of a new trial. He also found that Mayo was not an innocent bystander, as he claimed to be, but was the driver of the car, with the pistol beside him, and "was a burglar just like the other two."

We find no reason to disturb this ruling.

■ Ms. Rhoten's prior inconsistent testimony was admissible only for purposes of impeachment and testing her credibility, and it could not be used as substantive evidence of the truth of the matters asserted in it. *See McFarlin v. State*, 214 Tenn. 613, 381 S.W.2d 922, 924 (1964).

Although it is true that the jury did not hear the tape of the testimony given by Ms. Rhoten at the preliminary hearing, they did see and hear the witnesses who testified at the trial, including Ms. Rhoten, Mrs. Parris, and David Mayo, all three of whom were questioned in the jury's presence concerning the inconsistent testimony given by Ms. Rhoten at that hearing.

In addition, the trial judge, who was in the second-best position to evaluate the trial testimony, since he, like the jury, saw and heard the witnesses testify and was able to form an impression of their credibility, approved the jury's verdicts and overruled the motion for new trial. In doing so, he not only considered the evidence that was presented to the jury, he also considered the transcript of Ms. Rhoten's preliminary-hearing testimony as well as her affidavit.

It is well established in this state that a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in the testimony in favor of the theory of the State. *State v. Hatchett,* 560 S.W.2d 627, 630 (Tenn.1978). Moreover, on appeal the State is entitled to the strongest legitimate inferences which may be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978).

■ By their verdicts of guilty, which were approved by the trial judge, it is apparent that the jury rejected the testimony of the defendant and his witnesses and accredited the testimony of the State's witnesses, including that of Ms. Rhoten, and resolved all conflicts in the testimony in favor of the theory of the State. Furthermore, in our opinion, the discrepancies in Ms. Rhoten's testimony were not such as to destroy the fact that there was ample evidence that the defendant was guilty of the burglaries.

■ In attacking the sufficiency of the evidence, Mayo argues that no evidence of the first degree burglary was introduced at the trial. He also maintains that the evidence, being circumstantial, did not show him to have been an active participant in either of the two burglaries. Moreover, he contends that the evidence did not show that he shared the criminal intent of the perpetrators of the crimes or that he had knowledge that the burglaries were being committed.

Although it is true that the cigarettes which were retrieved from Mayo's car were not introduced into evidence or shown to have been the same ones stolen in the burglary of Ms. Calloway's house and no books of green stamps were ever proven to have been recovered, the testimony of Ms. Calloway shows that the back door to her house was broken into on the night of February 23, 1983, while she was away from home, and cigarettes and books of green stamps were stolen from the house. In addition, on that same night, Kenneth Bartley saw Steffey get out of an Oldsmobile, which was later shown to be driven by Mayo, knock on the front and back doors,

kick the back door in and enter the house. Within a few minutes, he saw Steffey leave the house, hop into the Oldsmobile, and ride away from the scene.

In our opinion, the evidence, as accredited by the jury, clearly shows that Steffey broke into and entered the dwelling house of Ms. Calloway, in the nighttime, with the intent to commit a felony in violation of T.C.A. § 39–3–401(a), thereby committing the offense of burglary in the first degree.

Moreover, the accredited evidence established that Mrs. Parris's automobile had been burglarized.

Evidence was also presented showing Mayo's participation in the burglaries as well as his guilty knowledge and criminal intent. His own testimony reveals that he was the driver of the Oldsmobile and that Steffey and Laney were the only other occupants of it from the time he drove it from Steffey's house until they were stopped and arrested. His testimony also admits that he, Steffey, and Laney were in it at the parking lot where Mrs. Parris's automobile was burglarized. Other evidence shows that his Oldsmobile was the same one that Ms. Rhoten saw parked next to her mother's car on this lot. And Ms. Rhoten's testimony, contrary to his insistence that he remained inside his car at the lot, reflects that no one was in his car when she first saw it there, but while it was still parked beside her mother's car, she saw two men, neither of whom was Laney, get into it and pull the sun visor down, even though it was nighttime.

Mayo's testimony also admitted that he drove his Oldsmobile to Ms. Calloway's house and backed it into the driveway. Bartley's testimony reveals that this was the same car he saw parked there during the burglary. And other evidence shows the car to be the same one that Officer Buckner chased and stopped and from which he took the pistol and the same one from which Officer Swayze retrieved Mrs. Parris's coat and tape.

In addition to the proof showing that the two men in the Oldsmobile pulled down the sun visor, preventing Ms. Rhoten from la-

ter being able to identify them, and Mayo's backing of his Oldsmobile into Ms. Calloway's driveway, obviously to make it easier to leave hurriedly, other proof of Mayo's participation, guilty knowledge, and intent was evidenced by: the look and grin given to him by Steffey after Steffey had determined that no one was at Ms. Calloway's home; Mayo's attempt to elude the officers and escape; and his carrying a loaded pistol in the seat of his car.

The jury's verdict has removed the defendant's presumption of innocence and has raised a presumption of guilt upon appeal. *State v. Grace*, 493 S.W.2d 474, 476 (Tenn.1973). Where the sufficiency of the evidence is challenged, the relevant question for the appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2782, 61 L.Ed.2d 560 (1979); T.R.A.P. 13(e). The standard of review on appeal is the same for circumstantial evidence cases as for all other cases. *See State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977); *State v. Delk*, 692 S.W.2d 431, 435 (Tenn.Crim.App.1985).

We are of the opinion that, when the evidence in the present case is viewed in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crimes for which Mayo was convicted beyond a reasonable doubt. We find that the proof before us is sufficient to meet the *Jackson* test, and we find that the appellant's first three issues are without merit.

Whether the prosecutor improperly argued, during closing argument, concerning prior bad acts of witness.

■ Appellant's fourth issue alleges that the assistant district attorney general committed error in his closing argument when he stated "that no evidence had been introduced as to prior bad acts of the witness, Brenda Calloway."

Initially, we call attention to the fact that this issue was not raised in Mayo's motion for a new trial; consequently, it is waived

on appeal. *State v. Allen*, 692 S.W.2d 651, 654 (Tenn.Crim.App.1985); *State v. Williams*, 675 S.W.2d 499, 501 (Tenn.Crim. App.1984); *State v. Durham*, 614 S.W.2d 815 (Tenn.Crim.App.1981); T.R.A.P. 3(e).

■ Furthermore, Mayo's testimony implied, as part of his defense, that Ms. Calloway was selling marijuana at her house. However, no credible evidence of this was ever introduced. Nor was defense counsel ever denied permission, by the trial court, to introduce evidence that she was selling marijuana.

We find no evidence that the appellant was denied due process, and we find no merit in this issue.

Whether the prosecutor improperly argued, during closing argument, concerning the missing witness rule.

■ Nor do we find merit in appellant's fifth issue, which alleges that the assistant district attorney general erred by arguing, during closing argument, that the defendant did not call Lester Steffey to the stand and that the trial judge would instruct the jury on the missing witness rule.

During his argument, the prosecutor pointed out that Laney was called as a witness by the defendant but that Steffey was not. He then asked the jury to listen very closely to the judge's charge about the missing witness rule and began explaining what he thought the judge would charge about the rule "if he does charge you about that." However, before he finished his explanation, the judge, without objection having been made by defense counsel, interrupted him and advised that he would not instruct the jury as to that. The prosecutor then argued that it was the State's position that Steffey was not called because his testimony would not be favorable to the defendant. Defense counsel objected, and in sustaining the objection, the court instructed the jury that they could draw no inference in that regard and that they must disregard that. In addition, the judge instructed the jury in his charge that "(T)he jury can draw no inference whatsoever from the failure of either side to call any possible witness."

We believe the trial judge's curative contemporaneous instructions to the jury and the additional instructions given in his charge were sufficient to render any improper remarks made by the prosecutor concerning this issue harmless and prevented them from affecting the results of the trial to the prejudice of the defendant. *See State v. Byerley* 658 S.W.2d 134, 139 (Tenn.Crim.App.1983); *Judge v. State*, 539 S.W.2d 340, 345 (Tenn.Crim.App.1976).

Furthermore, this issue, like issue four, is waived because it was not raised in the defendant's motion for new trial. T.R.A.P. 3(e).

Whether the trial court improperly ruled concerning the impeachment of a witness.

In his sixth issue, Mayo claims that it was error for the trial judge to deny his counsel the opportunity to impeach Brenda Calloway with testimony from Naomi Winegar, who was shown to be Mayo's sister and the receptionist in the office of Ms. Calloway's family doctor, Dr. Sambat.

During direct examination, Ms. Calloway testified that she did not know Mayo, Steffey, or Laney. On cross-examination, defense counsel attempted to impeach her by asking her if she recalled making a statement to Naomi Winegar, in Dr. Sambat's waiting room, that she did know Steffey and had previously sold marijuana to him. Ms. Calloway denied making this statement.

█ Extrinsic evidence of a prior inconsistent statement of a witness is inadmissible to impeach the statement of a witness on cross-examination as to collateral matters. *State v. Marlow*, 665 S.W.2d 410, 412 (Tenn.Crim.App.1983); *State v. Hill*, 598 S.W.2d 815, 820 (Tenn.Crim.App.1980). A collateral fact is one which affords no reasonable inference as to the principal matter in dispute. *State v. Marlow, supra*, page 412. If the inquiry on cross-examination is as to an inconsistent statement about a collateral matter, the cross-examiner is bound by the witness's answer, and cannot bring on other witnesses to prove the making of the alleged statement. *See State v. Marlow, supra*, page 412.

█ Under the facts before us, the questions of whether Ms. Calloway knew Lester Steffey or Carl Laney, or whether she told Ms. Winegar that she knew them afford no reasonable inferences as to whether Ms. Calloway's house was burglarized or whether, under the law, Mayo knowingly participated in its commission to such an extent as to make him guilty of such burglary. Consequently, they involve collateral matters. Defense counsel was bound by Ms. Calloway's answer on cross-examination concerning the alleged inconsistent statement, and he could not use Ms. Winegar to prove the making of the statement. This issue is without merit.

Whether the prosecutor improperly referred to Carl Laney's prior convictions as being the same charges for which the defendant was being tried.

█ In his seventh issue, the defendant claims that error was committed by the assistant district attorney general during his cross-examination of Carl Laney when, for impeachment purposes, he asked about two of Laney's prior convictions, one of which was for auto burglary and the other was for first degree burglary, and he commented that they were for the burglaries of Helen Parris's automobile and Brenda Calloway's house. Later, in distinguishing the different prior convictions, the prosecutor also commented, "And then you got convicted of another one and then these two (2)."

Since this issue was not raised in the defendant's motion for new trial, it is considered waived on appeal. T.R.A.P. 3(e).

Whether the trial court erred in denying appellant's request for probation.

The appellant's next issue contends that the trial court erred in denying him probation. The record reveals that appellant received an evidentiary hearing in which he was allowed to introduce evidence concerning the circumstances of the offense, his criminal record, his social history, his present condition, and his physical and mental condition.

█ We are obligated to review this issue on the record without a presumption

of correctness pursuant to T.C.A. § 40–35–402(d). Accordingly, we note that appellant has a wife and two small step-children, his wife's children from a previous marriage, whom he works to support. On the other hand, we also note that the appellant stands convicted of reckless driving, carrying arms, auto burglary, and first degree burglary. In addition, appellant has numerous other prior traffic and misdemeanor violations.

Consequently, we are in agreement with the trial court that probation is not warranted. While it may be in appellant's interest to remain free of incarceration, we cannot conclude that it is in the best interest of society. This issue, therefore, is without merit.

Whether the trial court erred in imposing consecutive sentences.

In his final issue, the appellant contends the trial court committed error in ordering consecutive sentences. Appellant was sentenced by the trial court to six years in the penitentiary for the first degree burglary offense and four years for burglary of a motor vehicle. The trial court ordered the sentences to be served consecutively. Our review of this issue, again, shall be conducted *de novo* on the record with no presumption of correctness pursuant to T.C.A. § 40–35–402(d).

The law is well settled that a consecutive sentence should be imposed only after a finding by the trial judge that confinement for such a term is necessary in order to protect the public from further criminal conduct by the defendant. *Gray v. State,* 538 S.W.2d 391, 393 (Tenn.1976). In *Gray* the Supreme Court enumerated five types of offenders for which consecutive sentencing should be reserved, including the dangerous offender.

▪ A defendant may be classified as a dangerous offender if the crimes for which he is convicted indicate that he has little or no hesitation about committing a crime in which the risk to human life is high. *Gray v. State, supra,* page 393. The decision to impose consecutive sentences when crimes inherently dangerous are involved should be based upon the presence of aggravating

circumstances and not merely on the fact that two or more dangerous crimes were committed. *Ibid.*

▪ In the case *sub judice,* we cannot agree with the learned trial judge that the record reveals that the appellant should have been sentenced as a dangerous offender. First, we note that the crimes for which appellant stands convicted are crimes against property rather than crimes against persons. Notwithstanding appellant's reckless driving conviction, we are not in accord with the trial court that the appellant has demonstrated a low regard for human life by his convictions. Second, nothing in the record suggests that the pistol found in the appellant's vehicle was used in the commission of any of the other crimes. Third, and most important, we find no presence of the kind of aggravated circumstances as required by *Gray.*

Weighing the totality of circumstances of the appellant's arrest and convictions in the light of the clear requirements of *Gray v. State, supra,* we cannot concur with the trial court's findings that the appellant is a dangerous offender or that he should be sentenced as such.

The judgment of the trial court, therefore, is modified to reflect that the sentences are to be served concurrently. The judgment as modified is affirmed.

DWYER and TATUM, JJ., concur.