IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

OCTOBER 1995 SESSION

| | | |
|---|---|---|
| STATE OF TENNESSEE | ) | NO. 01C01-9411-CC-00390 |
| | ) | |
| Appellee, | ) | DICKSON COUNTY |
| | ) | |
| vs. | ) | HONORABLE ALLEN W. WALLACE |
| | ) | CIRCUIT COURT JUDGE |
| CALVIN WAYNE SUGGS, | ) | |
| | ) | (SECOND-DEGREE MURDER AND) |
| Appellant. | ) | RECKLESS ENDANGERMENT) |

FOR THE APPELLANT:                          FOR THE APPELLEE:

Shipp R. Weems                              Charles W. Burson
District Public Defender                    Attorney General and Reporter
                                            450 James Robertson Parkway
Steve Stack                                 Nashville, Tennessee 37243-0493
Assistant Public Defender
23rd Judicial District                      Darian B. Taylor
P.O. Box 160                                Assistant Attorney General
Charlotte, TN 37036                         Criminal Justice Division
(on appeal)                                 450 James Robertson Parkway
                                            Nashville, TN 37243-0493
Jerry V. Smith
Littleton, Smith & Roberts                  Robert S. Wilson
300 N. Main Street                          and
Dickson, TN 37055                           Christopher L. Young
(at trial)                                  Asst. District Attorneys General
                                            P.O. Box 160
                                            Charlotte, TN 37036

FILED

October 10, 1996

Cecil W. Crowson
Appellate Court Clerk

OPINION FILED:

AFFIRMED AS MODIFIED


                                            ROBERT E. CORLEW, III, SPECIAL JUDGE

CONCUR:

GARY R. WADE, JUDGE
DAVID H. WELLES, JUDGE

From the decision of the Trial Court finding the Defendant guilty of second-degree murder and reckless endangerment, and sentencing him to serve twenty (20) years as a Range I Standard Offender for the conviction for murder, and two (2) years, concurrently, for reckless endangerment, the Defendant appeals.

The Appellant presents three issues for review. First he asserts that he was denied a fair trial because the State failed to provide information to the defense concerning a potential witness until immediately before trial, and the Court denied the Appellant's motion for continuance. Second, the Appellant asserts that the evidence presented was insufficient to support a finding that the Appellant was guilty of the charges. Third, the Appellant asserts that the Court failed properly to follow the sentencing guidelines, failing properly to state enhancing factors on which the Court relied, and in failing to consider mitigating factors advanced by the Appellant.

The facts show that the deceased, Timothy Hartley was a laborer who had worked for the Appellant's father, Vernie Suggs on the farm operated by the Appellant's father. On September 4, 1993, the Appellant felt as though Hartley should have come to work for the Appellant and the Appellant's father, but instead Hartley went with his brother-in-law, Bryce Swift and a third individual, Shawn Lenn, to cut tobacco on the farm of a Mr. Smith. The Appellant called the Hartley residence, by telephone, during the day on September 4, leaving a message for Hartley. On the evening of September 4, when Hartley, Swift and Lenn returned to the Hartley residence, Hartley's wife told Hartley about the telephone call she had received from the Appellant, which upset the Appellant. When Hartley and Swift were unable to reach the Appellant or his father by telephone, Swift and Hartley went to the Appellant's father's residence to talk with the Appellant and his father to resolve the misunderstanding. Lenn left the Hartley residence, but did not go with Swift and Hartley to the Appellant's father's residence.

A number of persons, including family members were gathered at the Suggs' residence, enjoying a barbecue. The Appellant asserted that Hartley appeared to be very angry upon his arrival at the Suggs' residence, and expressed anger to the Appellant regarding the telephone call

3

which Appellant had made earlier to Hartley's wife. Further words were exchanged, and the Appellant went into his father's residence, picked up a shotgun, and took the gun outside, where the Appellant's father, Swift, and Hartley were talking. The Appellant asserted that he took the gun to the discussion for his protection, but upon his arrival outside the residence, the Appellant's father told the Appellant to put the gun down. The Appellant testified that he put the gun down, but the evidence shows that he retrieved the weapon, and shot Hartley through the heart, killing him instantly. The Appellant's father, Vernon Suggs was also injured by the gun blast. The Appellant relied upon defenses of accident and self-defense, alleging that he did not intend to shoot the gun, nor did he remember having fired it, and also asserting that the deceased lunged at him immediately before he fired.

The only information that the Appellant asserts that Shawn Lenn would have been able to provide surrounded Lenn's work with Swift and the deceased during the day of September 4. Questions arose as to whether the deceased had been drinking as he worked, and as to whether the deceased and his wife quarreled prior to the time when Swift and the deceased went to the Suggs' residence. At the time of the hearing, Lenn was serving in the Army, stationed in Korea. The Appellant asserts that more than six months prior to trial the State had possession of an investigative memorandum mentioning Lenn, although not by name and indicating that the testimony of Lenn would contradict the testimonies of Swift and the wife of the deceased in two particulars. Swift testified Hartley had little to drink during the afternoon before going to the Suggs' residence while the memorandum suggested Lenn would testify that Hartley had consumed several beers. Mrs. Hartley denied the occurrence of any arguments she had with her deceased husband. The memorandum suggests, the Appellant asserts, that Lenn would testify that he left the Hartley residence because he did not wish to be present while Mr. and Mrs. Hartley continued their arguments. The Appellant made discovery requests in November of 1993, but the State did not provide information concerning the witness to the Appellant until approximately one week prior to trial. The Appellant moved for a continuance shortly before the trial, asserting that Lenn was an indispensable witness, seeking time to secure his presence.

The Court denied the motion for continuance.

At the time of the commission of the offense herein, the Appellant was under a suspended sentence from the order of the Dickson County General Sessions Court. He had also sustained an injury earlier to his knee, as a result of an incident in which the Appellant and the deceased were engaged in horseplay. The Appellant had suffered the tearing of ligaments in his knee, and subsequently required two surgeries. At the trial, the testimony of the assistant medical examiner who performed the autopsy showed that the deceased died from a gunshot blast fired from as close as two and a half feet away, or as far as nine feet away. She further testified that the blood alcohol level of the deceased indicated that he had consumed approximately five and one-half beers shortly before being killed. The testimony of the doctor contradicts the testimony of the Appellant's father, who stated that "the gun went off" during a struggle between the Appellant and the deceased, and contradicts the testimony of Swift that the deceased had consumed only a small amount of alcohol immediately prior to his death.

Evidence was presented from which the jury could have found that the Appellant acted under provocation. Evidence was presented that the deceased appeared angry when he arrived at the Appellant's father's home, and interrupted a family barbecue. Words were exchanged between the deceased and the Appellant. Evidence further was presented that the deceased frequently bragged about his service in the military forces, and particularly his service during Desert Storm. Further, because of the deceased's size (two hundred and twenty-five pounds) the Appellant's physical disabilities due to the earlier horseplay incident between the Appellant and the deceased, and the circumstances of the prior incident between the deceased and the Appellant, the Appellant asserts that he was fearful of the deceased on the evening in question. Both the Appellant and the deceased had been drinking, but the deceased was unarmed. The deceased was accompanied by his friend Bryce Swift, while a number of the Appellant's friends and relatives were present.

5

The Appellant first complains that the Trial Court should have granted his motion for continuance, when he discovered only one week prior to trial the identity of Shawn Lenn, whom the Appellant wished to call as a witness. It is undisputed that Lenn was not present when the offense occurred. Apparently the testimony which he could have provided is very limited. It appears Lenn could have testified that he cut tobacco on the farm of another all day on September 4, together with Bryce Swift and the deceased. The memorandum suggests he could testify as to alcohol consumption by the deceased and Swift during the day on which Hartley was killed, and he could present testimony whether the deceased had argued with his spouse or others prior to going to the Appellant's father's home. The Appellant asserts that Lenn indicated that the deceased had been drinking heavily, and fighting with his wife prior to going to the Appellant's father's residence. We find none of these issues to be sufficiently significant to show that the Trial Judge abused his discretion in failing to grant a continuance. The fact that Lenn, Swift, and the deceased had been cutting tobacco for another person is undisputed. Whether he argued with his wife earlier in the evening is irrelevant, and that the deceased had consumed more than five beers immediately prior to the incident was established by the testimony of the medical examiner. There was no other information that Mr. Lenn could provide to the Court. We recognize that Lenn's testimony perhaps would have corroborated the doctor's testimony concerning alcohol consumption of the victim, and in some manner may have contradicted the testimonies of Swift and the victim's wife, Alicia Hartley. At the same time, Lenn was stationed, the record reflects in Korea, in the military service. Obtaining his live testimony would have necessitated rescheduling the case at a time when Lenn would voluntarily return, could obtain leave, or could be brought back to this country for purpose of obtaining his testimony. A number of witnesses testified in this cause, and the record reflects that Lenn's testimony would be largely cumulative.

The issue of the granting of continuances for the purpose of obtaining testimony of witnesses rest largely within the sound discretion of the Trial Court. *Woods v. State*, 552 S.W.2d 782, 784 (Tenn. Crim. App. 1977) *cert. denied*. Absent a clear showing of abuse of that

6

discretion and a manifest showing of prejudice to the Appellant, we should not reverse the Trial Court's decision denying a continuance due to the unavailability of a witness. *Latham v. State*, 560 S.W.2d 410, 411 (Tenn. Crim. App. 1977) *cert. denied* (Tenn. 1978). In this cause, we find no abuse of discretion on the part of the Trial Judge. There was no showing of any evidence that the absent witness would provide other than cumulative testimony or testimony which surrounded events earlier in the day which were either irrelevant or of very marginal consequence. The Court recognizes that the defense was hampered in its late discovery of the existence of Lenn, yet the record reflects that he was employed in the military service, stationed on the other side of the world, and there was no indication of any time at which he would reasonably be available for testimony in the foreseeable future. Given these circumstances, we find that the Trial Judge soundly exercised the discretion which the law provides to him in such matters.

Next the Court must consider whether the State committed violations which demand reversal of this cause for the reason that the memorandum containing information surrounding Shawn Lenn was not provided to the defense in a more timely manner. Counsel for the defense filed a Motion for Discovery and Inspection on November 18, 1993. While the State answered that motion on January 27, 1994, Lenn was not listed as a potential witness, and the State answered that there was no exculpatory evidence in the case. The case was set for trial on March 23, 1994, and one week prior to trial, on March 16, 1994, the District Attorney provided to counsel for the Appellant the memorandum in question concerning a call which had been received by a law enforcement agency, identifying a caller from Clarksville, Tennessee, who told authorities she had received a call, apparently from Shawn Lenn, while Lenn was stationed in Korea, although she did not identify Lenn according to the police memorandum. The caller stated to authorities

> she was told by unidentified soldier that he was at Hartleys (sic) Saturday evening. Other unidentified people were present. Hartley and his wife were fussing + fighting. Hartley was drinking. This man tried to calm Hartley down then left because he was tired of listening to them.

7

The memorandum was written on a document entitled "Supplementary Report" and bore the date of September 10, 1993, some six days following the death of the victim.

Exculpatory evidence has been defined to include evidence favorable to a defendant pertaining to the issue of guilt or innocence and/or punishment which may be imposed if the defendant is convicted. *Brady v. Maryland*, 373 U.S. 83 (1963). Constitutional due process is violated where favorable evidence is not provided, despite good faith of the state. *Id*. at 87. The duty to provide information to the defendant extends not only to admissible evidence, but any favorable information which is unknown to the defendant. *State v. Marshall*, 845 S.W.2d 231-32 (Tenn. Crim. App. 1992) *perm. app. denied*.

Thus we have held that three elements must be satisfied before the Court finds a due process violation. First, the prosecution must have suppressed the evidence, whether exercising good or bad faith. Second, the evidence which is suppressed must have been favorable to the defendant. And third, the evidence must have been material to the questions before the Court. *Workman v. State*, 868 S.W.2d 705, 709 (Tenn. Crim. App. 1993) *perm. app. denied*.

In this cause, we recognize that it is undisputed that the State provided the memorandum in question to the defense, but did so only seven days prior to trial. A discovery motion was filed more than four months prior to trial, requesting that the information subject to discovery be provided "as soon as practicable and that newly found discoverable material be provided not less than ten (10) days before the trial of this matter, if discovered prior to that date." The State insists that it has complied at least with the constitutional requirements involving the discovery of exculpatory evidence. We find, however, that the State had in its possession, or available to it the memorandum in question before the Motion for Discovery was filed. The State had a duty to disclose that memorandum to the defendant in a reasonable period of time. The State delayed the delivery of the memorandum to the defendant until so close to trial that the defendant was unable effectively to utilize the memorandum in preparation for trial, but only upon motion for new trial which was heard more than three months post-trial. Suppression of exculpatory evidence for such a period of time after requests for delivery of such information have been made

8

by a defendant that the defendant is unable effectively to utilize the information constitutes a violation of the *Brady* rule. *State v. Caughron*, 855 S.W.2d 526, 548 (Tenn. 1993); *Branch v. State*, 469 S.W.2d 533, 535 (Tenn. Crim. App. 1969) *cert. denied* (Tenn. 1970).

Thus, we find that the State violated the first of the three requirements which must be met to show a failure on the part of the State to deliver exculpatory information.

We must next consider whether the evidence suppressed by the State was favorable to the defendant. Here the position of the Appellant is not as strong. There is no contention upon the part of the Appellant that the memorandum which was suppressed was evidence within itself, but that it would in fact lead to admissible evidence. Ultimately, the reviewing court must subjectively determine the injury to the defense caused by the State's misconduct. *State v. Caughron, supra*, at 547. The memorandum which was not timely provided led the defense in some five days to the partial identity of the witness who had been with the victim during most of the day of his death. Although the presence of the witness was never secured, the fact that he was serving in the United States Army in Korea, and his rank was ascertained prior to trial. Prior to the filing of the motion for new trial, the first name of the witness was secured, but no statement was obtained from him. Thus, despite the statements contained in the suppressed memorandum and the assertions of the counsel for the Appellant, the record contains no testimony of this witness, and no evidence which will aid this Court in determining that the witness would have testified in a manner favorable to the Appellant, other than the written double hearsay contained in the police memorandum of September 10, 1994. Information which may be used by defense counsel in impeachment of witnesses must be disclosed. *State v. Davis*, 823 S.W.2d 217, 218 (Tenn. Crim. App. 1991). Even without the presence of the witness, Shawn Lenn, the memorandum provided opportunities for cross examination of witnesses who testified for the State concerning the peacefulness of the victim, or lack thereof and his consumption of alcohol on the day in question. We find that the tardy delivery of the memorandum to the defense did not hamper the presentation by the defense in court in conduct of cross examination. We further find that without information in the record other than the

9

memorandum containing double hearsay, the record does not establish information sufficient for us to determine that the information which the defense would reasonably have secured had the memorandum been timely provided would have been favorable or unfavorable. There is no suggestion that the absent witness ever went to the Appellant's father's residence, and no assertion that he had any knowledge except that he had worked all day with the victim and was with him during the evening at some point before the victim went to the Appellant's father's residence and was killed.

The third factor which we will consider, despite the fact that we have already found that the record does not supply information from which we can determine that favorable testimony would have been provided by the absent witness had the State timely provided the memorandum in question, is that the information must be material. The record reflects that evidence was introduced at trial concerning the peacefulness of the victim during the evening at some point prior to the victim's travel to the residence where he was killed. Evidence was also presented as to the amount of alcohol which the victim had consumed during the day and evening hours prior to his death. While the peacefulness of the victim at the scene where he was killed certainly is material, we find the question of his peacefulness earlier in the evening to be a collateral issue. Evidence concerning the general reputation of the victim for violence or peacefulness may be admitted, but specific events of violence or peacefulness separate and apart from the scene in question generally are not material and at best are collateral in nature. *See, State v. Meeks*, 867 S.W.2d 361, 376 (Tenn. Crim. App. 1993) *perm. app. denied; State v. Payton*, 781 S.W.2d 490, 493 (Tenn. Crim. App. 1989) *perm. app. denied; State v. McDougle*, 681 S.W.2d 578, 583 (Tenn. Crim. App. 1984). When questions are asked of a witness as to a collateral issue, the party questioning the witness concerning that collateral issue is bound by the answer provided by the witness, and is precluded from presenting further witnesses or substantive evidence on that collateral issue. *State v. Mayo*, 735 S.W.2d 811, 817 (Tenn. Crim. App. 1987); *State v. Hill*, 598 S.W.2d 815, 828 (Tenn. Crim. App. 1980) *perm. app. denied; See, State v. Wilson*, 687 S.W.2d 720, 724 (Tenn. Crim. App. 1984) *perm. app. denied* (Tenn.

10

1985). Thus we find that even had the State provided the memorandum in a timely fashion which it was required to do, and which it failed to do, and if the suggested witness had been produced within a reasonable time, and had been presented to testify in response to the witnesses presented by the State upon the issue of the earlier peacefulness or lack thereof on the part of the victim, the Court would properly have denied the Appellant's right to present this witness to testify upon this issue, for the reason that the matter in question was collateral in nature.

The Appellant also suggests that the witness, if produced, would testify that the victim had consumed a large amount of alcohol earlier in the day. While this issue also, strictly, is irrelevant to the matters before the Court, the Court recognizes obviously that the question whether one has consumed alcohol earlier in the day has bearing upon his sobriety later on that same day. Similarly, the degree of intoxication of the victim may also have some bearing upon his violence or peacefulness at the time and place of his death. While the State presented witnesses who testified that the victim had drunk very little earlier in the day, the State also presented the medical examiner, truly a disinterested witness, who presented evidence concerning blood samples taken from the victim which appear unequivocally to prove the blood alcohol level of the victim at the time of his death, and further presented credible expert testimony as to the amount of alcohol which the deceased consumed earlier in the day prior to his death. At best, the evidence presented by Shawn Lenn, the missing witness, would have been cumulative as to this issue.

Thus, subjectively, we find that the failure of the State to disclose the exculpatory memorandum to the defense in a timely fashion was not prejudicial to the defense and does not warrant reversal.

The Appellant also presents to the Court the question whether the evidence presented supports the verdict rendered by the jury. We have previously recited the facts which the jury heard. The jury found the Appellant guilty of murder in the second degree and reckless endangerment. Upon appeal, the State is entitled to the strongest legitimate view of the evidence in its favor. *State v. Pritchett*, 524 S.W.2d 470, 472 (Tenn. 1975); *State v. Hill*, 598 S.W.2d

11

815, 818 (Tenn. Crim. App. 1980) *perm. app. denied.* A verdict rendered against a defendant removes the presumption of innocence, and, upon appeal, raises a presumption of guilt, which the Appellant must overcome. *State v. Smith*, 868 S.W.2d 561, 569 (Tenn. 1993). After careful consideration of the evidence presented, we find that there was substantial evidence to support the finding of the jury in both counts of the indictment. This assignment of error likewise must be respectfully denied.

The Appellant also suggests to the Court that in determining whether the jury properly decided the issues, the Court must consider the absence of Shawn Lenn. We have previously discussed at length the effect of Lenn's absence, and find that his failure to testify is not a factor which the Court should consider in determining the weight and sufficiency of the evidence. As we have previously found, the record does not contain direct testimony as to the knowledge of the missing individual, Shawn Lenn, and upon the hearsay information contained in the record, we find that had such testimony been properly presented in the record, it would have been either cumulative or collateral. This issue is without merit.

Finally, the Appellant argues that the Trial Court failed to properly follow the sentencing guidelines set forth under Tennessee law. On this issue, we must concur, and we modify the sentence ordered by the Trial Court.

The Trial Court sentenced the defendant to serve twenty years as a Standard, Range I offender, for his conviction for second-degree murder, and sentenced the defendant to serve two years for reckless endangerment, also as a Standard, Range I offender. Tennessee law provides that the range of punishment for second-degree murder, a Class A felony, is fifteen to twenty-five years. *Tennessee Code Annotated §40-35-112 (A1) (1990).* Likewise, Tennessee law provides the range of punishment for reckless endangerment, a Class E felony, to be not less than one nor more than two years. *Tennessee Code Annotated §40-35-112 (a) (5) (1990).* Upon review of a sentence, we must conduct a *de novo* review of the sentencing issues raised on appeal. *State v. Fletcher*, 805 S.W.2d 785, 786 (Tenn. Crim. App. 1991). Where the record does not reflect, however, that the Trial Court properly considered the provisions of the Tennessee Sentencing

Act, the presumptions of correctness which otherwise apply to the sentence determined by the Trial Court fail. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The burden of showing that the sentence is improper is upon the Appellant. *Id.*

In sentencing a defendant, the Court must first consider the presumptive minimum sentence provided by law, and then determine whether that sentence should be increased due to statutorily provided enhancement factors, or reduced due to statutorily provided mitigating factors. *Tennessee Code Annotated §*40-35-210 (c) (d) (e) (1990).[1]

The Trial Court found that the crime was "an especially violent and horrifying and reprehensible offense," and that "there seemed to be no hesitation about committing the crime in which the risk to human life was high." The Court further found that the Appellant was on probation for assault, a crime of violence, and for those reasons sentenced the Appellant to serve twenty years for murder in the second-degree. Apparently using the same criteria, the Trial Court sentenced the Appellant to the maximum of two years for the crime of reckless endangerment. *Tennessee Code Annotated §*40-35-114 provides factors the sentencing Court may consider for purposes of enhancing or increasing the punishment ordered for a defendant. *Tennessee Code Annotated §*40-35-114 (1995 Supp.). We find that the Trial Court improperly applied *Tennessee Code Annotated § 40-35-114(10),* that the "defendant had no hesitation about committing a crime when the risk to human life was high." Given that the record does not clearly demonstrate that there were individuals other than Hartley and Vernon Suggs in danger of being wounded, we conclude that the high risk to human life was inherent in the offenses committed. *See Tennessee Code Annotated § * 40-35-114 Sentencing Commission Comments; *State v. Butler*, 900 S.W.2d 305, 314 (Tenn. Crim. App. 1994). That the offense was "an especially violent and horrifying and reprehensible offense" is not a factor which may be statutorily considered to enhance the punishment provided for a defendant, and we must consider

---

[1]The 1995 Acts of the Tennessee Legislature now require a judge to consider the presumptive sentence for a Class A felony to be the mid-point of the range where there are no enhancement or mitigating factors. *Tennessee Code Annotated §*40-35-210 (c) (1995 Supp.) The Appellant, however, is entitled to be sentenced under the terms of the prior law which provided that the presumptive sentence was the minimum sentence in the range for all classes of felonies. *Tennessee Code Annotated §*40-35-210 (1990).

that the legislature intended those factors to have been made a part of the minimum sentence for a crime of murder in the second-degree, a Class A felony. Similarly, as the State acknowledges, the Court may not consider whether the Defendant was, at the time, on probation for a crime of violence. The Court could have considered this factor in determining whether the sentence placed upon the Appellant was to be served concurrently or consecutively, but it is not an appropriate enhancement factor. *Compare, Tennessee Code Annotated §40-35-114* (1995 Supp.) *with Tennessee Code Annotated §40-35-115* (1990).

The State suggests that the Trial Court further applied the following enhancement factor: "The defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense." *Tennessee Code Annotated §40-35-114* (1995 Supp.). The record reflects that the Trial Court did not apply this enhancement factor. Upon our *de novo* review, however, we find that it is applicable to the defendant's sentence for second degree murder since the use of a firearm is not an element of that offense. *State v. Raines*, 882 S.W.2d 376, 385 (Tenn. Crim. App. 1994); *Butler, supra* at 312-313. This enhancement factor is not applicable to the defendant's sentence for reckless endangerment because felony reckless endangerment requires the use of a deadly weapon. *Tennessee Code Annotated* § 39-13-103(b) (1991). In addition, due to the defendant's prior conviction for assault, we find that the "previous history of criminal convictions or criminal behavior" enhancement factor is applicable to the defendant's sentences for both second degree murder and reckless endangerment. *Tennessee Code Annotated* § 40-35-114(1) (1990). Furthermore, with regard to the defendant's sentence for reckless endangerment, we find *Tennessee Code Annotated* § 40-35-114(12), that "[d]uring the commission of the felony, the defendant willfully inflicted bodily injury upon another person," to be applicable. As a result, we conclude that there are two enhancing factors properly applicable to each of the defendant's sentences.

The Appellant suggests that four mitigating factors should be applied: (1) that the defendant acted under strong provocation; (2) that substantial grounds existed tending to excuse or justify the actions of the defendant though failing to establish a defense; (3) that the

defendant suffered a physical or mental condition significantly reducing his culpability for the commission of the offense; and (4) that the defendant committed the offense under unusual circumstances such that it was unlikely that the defendant sustained intent to violate the law. *Tennessee Code Annotated §*40-35-113 (2), (3), (8), (11) (1990). The sentencing court failed to address any of these mitigating factors, and we find from the silent record that the Court found them all to be inapplicable. We concur. The evidence fails to establish provocation sufficient to apply this enhancement factor. The proof shows that the Appellant had been injured some months before in a horseplaying incident, the injury having been occasioned by the deceased. The evidence further showed that the victim may have been angry at the time he arrived at the Appellant's father's residence, although this factor was controverted. These factors, though, are insufficient to establish any provocation for the killing of the victim. We fail to find any evidence which would tend to excuse or justify the actions of the Appellant in killing the victim, nor do we find the physical disability from which the Appellant suffered, being his prior injury occasioned by the carelessness of the victim to establish mitigating factors. Finally, we find no unusual circumstances sufficient to find that it is unlikely that the Appellant sustained the intent to violate the law in the killing of the victim. We also find no evidence that any of these mitigating factors is applicable to the conviction for reckless endangerment.

After consideration of the issue of sentencing, upon our *de novo* review, we find that it is appropriate to modify the sentence which the Trial Court imposed upon the Appellant for the offense of murder in the second-degree, and find that a sentence of seventeen years in the state penitentiary as a Standard, Range I, thirty percent offender is appropriate. We find further that a sentence of one year in the state penitentiary, to be served concurrent with the other, is appropriate for the defendant's conviction for reckless endangerment.

We therefore affirm the decision of the Trial Court, and modify the sentence ordered.

AFFIRMED AS MODIFIED.

_____

_____ROBERT E. CORLEW, III

15

SPECIAL JUDGE

CONCUR:

_____
GARY R. WADE, JUDGE


_____
DAVID H. WELLES, JUDGE

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

| | | |
|---|---|---|
| STATE OF TENNESSEE | ) | NO. 01C01-9411-CC-00390 |
| | ) | |
| Appellee, | ) | DICKSON COUNTY |
| | ) | |
| vs. | ) | HONORABLE ALLEN W. WALLACE |
| | ) | CIRCUIT COURT JUDGE |
| CALVIN WAYNE SUGGS, | ) | |
| | ) | (SECOND-DEGREE MURDER AND |
| Appellant. | ) | RECKLESS ENDANGERMENT) |

**<u>JUDGMENT</u>**

Came the Appellant, Calvin Wayne Suggs, by and through counsel, and also the Attorney General on behalf of the State, who submitted this cause to the Court upon briefs, and the entire record on appeal from the Circuit Court for Dickson County, Tennessee, and upon consideration thereof, we find that the judgment of the Trial Court should be affirmed, in that the Defendant is guilty of murder in the second-degree, and reckless endangerment. After consideration of the sentence imposed by the Trial Court, we find that the sentence should be modified, in that the Appellant shall serve seventeen years in the Tennessee State Penitentiary for the offense of murder in the second-degree and one year in the State Penitentiary for the offense of reckless endangerment, those sentences to run concurrently.

In accordance with the Opinion filed herein, it is ordered and adjudged by this Court that the judgment of the Trial Court is affirmed as modified. This cause is remanded to the Circuit Court of Dickson County for the collection of costs accrued below.

Because the Appellant, Calvin Wayne Suggs, is indigent, costs will be paid by the State of Tennessee.

GARY R. WADE, JUDGE
DAVID H. WELLES, JUDGE
ROBERT E. CORLEW, III, SPECIAL JUDGE