# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
January 16, 2002 Session

## STATE OF TENNESSEE v. JOEL CHRISTIAN PARKER

**Direct Appeal from the Criminal Court for Putnam County**
**No. 99-0299     Leon Burns, Jr., Judge**

---

**No. M2001-00773-CCA-R3-CD - Filed December 18, 2002**

---

On February 2, 2000, the defendant was convicted by a jury of the offense of aggravated robbery. He received a sentence of nine years in the state penitentiary. In this appeal he raises eight (8) issues for our review: (1) whether the evidence is sufficient to support the verdict; (2) whether the defendant was tried by a fair and impartial jury; (3) whether the trial court committed reversible error in failing to instruct the jury on the offenses of assault or aggravated assault; (4) whether there was prosecutorial misconduct; (5) whether the defendant was subjected to a constitutionally flawed show-up shortly after the robbery; (6) whether the trial court correctly instructed the jury as to what they must do if they have a reasonable doubt that the defendant possessed the requisite mental state for the offense; (7) whether the trial court should have dismissed the case because the state destroyed evidence fundamental to the defense; (8) whether the defendant's sentence is excessive.

We have carefully reviewed each of these claims, and we find that none merit reversal of this case. The judgment of the trial court is therefore affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and THOMAS T. WOODALL, JJ., joined.

John B. Nisbett, III, Assistant Public Defender, Cookeville, Tennessee, for the appellant, Joel Christian Parker.

Paul G. Summers, Attorney General and Reporter; Christine M. Lapps, Assistant Attorney General; William Edward Gibson, District Attorney General; Benjamin W. Fann and David Alan Patterson, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## Factual Background

On November 12, 1998, the defendant drove a blue Volvo station wagon to the front of the Quick Cash Pawn Shop in Cookeville, Tennessee. He talked with shop employee, Chris Farris, about trading guns. He also looked at some guns the shop had in its inventory. Farris explained to the defendant that the pawn shop did not deal in guns to any great extent and that an individual had to be twenty-one years old to trade firearms. The defendant left the shop.

That same afternoon the defendant returned to the pawn shop. On this occasion he was wearing a camouflaged hat and jacket and a bandana over his face. Mr. Farris and another employee, Matt Betcher, were in the shop at the time. The defendant put a gun to Betcher's head and demanded to see the shop's pistols. Farris began taking some pistols out of the cabinets when the defendant demanded to see more expensive guns. He placed the gun to Farris' head and asked Betcher if he wanted to see his friend die. The defendant fled the store with three guns and some ammunition.

Upon leaving the store the defendant got in his car parked near the back of the pawn shop. He drove to the home of a friend named Josh Robertson. The defendant told Robertson about the robbery and gave Robertson the stolen weapons.

Approximately one hour after the robbery, police officer Mark Loftis arrested the defendant and recovered the gun used in the robbery. Loftis took the defendant back to the pawn shop where Farris positively identified him as the robber.

## Sufficiency of the Evidence

The defendant questions the sufficiency of the evidence on two points. First, he claims the State failed to prove that he took the guns from the pawn shop without the owner's effective consent. Second, he claims the state failed to prove that he acted intentionally or knowingly.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may

be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence in evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779. Of course, a criminal offense may be established exclusively by circumstantial evidence. State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987); State v. Jones, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995). However, the trier of fact must be able to "determine from the proof that all other reasonable theories except that of guilt are excluded." Jones, 901 S.W.2d at 396; see also, e.g., Tharpe, 726 S.W.2d at 900.

Aggravated robbery is the "intentional or knowing theft of property from the person of another by violence or putting the person in fear" through the use of a deadly weapon. Tenn. Code Ann. § 39-13-401, 402. Thus, the State was required to prove, inter alia, that the defendant committed a "theft."

"Theft" is committed "if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103. The term "owner" as used in Title 39 of the code is broader than its commonly understood meaning. "Owner" is defined as "a person, other than the defendant, who has possession of or any interest other than a mortgage, deed of trust or security interest in property, even though that possession or interest is unlawful and without whose consent the defendant has no authority to exert control over the property." Tenn. Code Ann. § 39-11-106(a)(26). Mssrs. Farris and Betcher, the pawn shop employees, were clearly "owners" within the meaning of sections 39-11-106(26) and 39-14-103. They were in lawful possession of the guns that the defendant removed from the shop at gunpoint, and only with their effective consent could the defendant take the guns from the shop.[1] It was not necessary for the state to prove who had actual title to the weapons.

The defendant also claims that the State failed to prove he acted "intentionally or knowingly" when he removed the guns from the pawn shop at gunpoint. He bases this claim on an assertion that he was so intoxicated that he could not form these mental states. Intoxication, either voluntary or involuntary, may be relevant on the question of whether the defendant could form the necessary mental elements for the commission of a crime. Tenn. Code Ann. § 39-11-503(a). However, the determination of whether a defendant's intoxication negated a required mental element is one for the jury. State v. Morris, 24 S.W.3d 788, 796 (Tenn. 2000).

Although a part empty bottle of whiskey was found in the defendant's car, and Josh Robertson testified that the defendant was drinking, both Farris and Betcher testified that the defendant did not appear intoxicated during the robbery. Officer Loftis, who arrested the defendant, and Officer Gragg, who later questioned him, both stated the defendant did not appear intoxicated. Another officer testified that he thought the defendant had been drinking but that he did not appear drunk. From all of this there is ample proof from which the jury could conclude beyond a reasonable

---

[1] "Consent" is not effective when obtained through coercion. Tenn. Code Ann. § 39-11-106(a)(9)(A).

doubt that intoxication had not vitiated the defendant's ability to act intentionally or knowingly and that he had in fact done so. This issue is without merit.

## Challenge to Jurors

The defendant complains that two (2) jurors who sat on his case were biased and should have been excused for cause during jury selection. The defendant complains that he was forced to use up his peremptory challenges on other potential jurors and therefore the two (2) jurors in question here were allowed to sit on the case.

There is however a flaw in the defense argument on this point that counsel for the defense failed to note in his brief. At trial defense counsel never requested removal for cause of the two (2) jurors in question. The defendant has waived this issue on this ground alone. Tenn. R. App. P. 36(a). Moreover, a criminal defendant must not only exhaust his peremptory challenges, but he must also challenge or offer to challenge an additional prospective juror in order to complain on appeal that the trial judge's decision in refusing to excuse a juror for cause resulted in a biased jury. State v. Doelman, 620 S.W.2d 96, 100 (Tenn. Crim. App. 1981). This issue is without merit.

## Lack of Jury Instructions on Lesser-Included Offenses

The defendant next complains that the trial court erred in failing to instruct the jury with respect to the crimes of assault and aggravated assault. The State concedes that assault by intentionally or knowingly causing another reasonably to fear imminent bodily injury and aggravated assault are lesser-included offenses of aggravated robbery under part (a) of the test announced in State v. Burns, 6 S.W.3d 453 (Tenn. 1999). We agree with the parties on this point. See State v. James Eric Alder, No. M1999-02544-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 843 (Tenn. Crim. App. at Nashville, Oct. 27, 2000); State v. Jason Carter, No. M1998-00789-CCA-R3-CD (Tenn. Crim. App. Apr. 27, 2000). However, the State contends the trial court did not err in declining to instruct the jury on these offenses because there is no evidence from which the jury could have found the existence of the lesser offenses as opposed to the offense of aggravated robbery.

Tennessee Code Annotated section 40-18-110(a) (1997) provides:

> It is the duty of all judges charging juries in cases of criminal prosecutions for any felony wherein two (2) or more grades or classes of offense may be included in the indictment, to charge the jury as to all of the law of each offense included in the indictment, without any request on the part of the defendant to do so.[2]

In State v. Ely, 48 S.W.3d 710, 726 (Tenn. 2001), our state supreme court definitively held that this statutory admonition to trial judges enjoyed constitutional stature under Article 1, Section

---

[2] On January 1, 2002, an amended version of this statute became effective for cases tried after that date.

6 of the Constitution of Tennessee, guaranteeing the right to trial by jury. The court also noted that section 40-18-110(a) (1997) has been interpreted to mean that the duty to instruct the jury as to a lesser-included offense does not arise unless the evidence is sufficient to support a conviction for the lesser offense. Id. at 718 (citing State v. Burns, 6 S.W.3d 453, 464 (quoting State v. Langford, 994 S.W.2d 126, 128 (Tenn. 1999))). However, the question of whether this evidentiary trigger required proof of the lesser offense as opposed to the greater continued to vex the trial and intermediate appellate courts. In State v. Allen, 69 S.W.3d 181 (Tenn. 2002), and most recently in State v. Linnell Richmond, No. E2000-01545-SC-R11-CD, 2002 Tenn. LEXIS 473 (Tenn. Nov. 1, 2002) (Southwest Reporter cite not yet available), the Court definitively answered this question as well. If evidence is sufficient to warrant a jury instruction on the greater offense, it is also sufficient to warrant an instruction on the lesser-included offenses under part (a) of the Burns test. Id.; Allen, 69 S.W.3d at 181.

Turning to the instant case, the evidence is clearly sufficient to warrant an instruction on aggravated robbery. It is therefore a fortiori sufficient to warrant an instruction on the Burns part (a) lesser-included offenses of assault by means of intentionally putting a person in fear of imminent bodily injury and aggravated assault. It was therefore error for the trial court to fail to instruct the jury with respect to those offenses.

Harmless Error

The determination that the failure to instruct the jury on the lesser-included offenses noted above was error is not the end of our inquiry. Since the advent of State v. Williams, 977 S.W.2d 101, 105 (Tenn. 1998), it has been clearly established that a failure of the trial judge to instruct on a lesser-included offense is subject to harmless error analysis. With the arrival of the opinion in Ely, 49 S.W.3d at 726, we know that the harmless error analysis is constitutional in nature and that therefore when there is an error in the failure to instruct the jury on a lesser-included offense, the State must prove beyond a reasonable doubt that the error was harmless. Id. at 727.

The precise mechanics of this constitutional harmless error analysis have proven almost as problematic for the intermediate appellate courts as the substantiative issue analysis in this area. In Williams, 977 S.W.2d at 105, the supreme court held that a conviction by a jury of the greatest offense charged to the exclusion of lesser-included offenses upon which the panel was instructed belies any argument that the failure to instruct on even less serious offenses is reversible error. However, in Allen, 69 S.W.3d at 190-91, the supreme court clarified that Williams did not present the only scenario in which the failure to instruct on a lesser-included offense will be harmless beyond a reasonable doubt. In its most recent refinement of the appropriate harmless error analysis in this area, the Tennessee Supreme Court has held that

> . . . when a reviewing court determines whether a lesser-included offense ought to be charged, the evidence clearly controls. If there is evidence sufficient to support a conviction for a lesser-included offense, we hold that a trial court must charge that offense. The

determinative test being whether there is evidence sufficient such that a jury <u>could</u> convict on that lesser-included offense. If a jury could convict, no matter how improbable, it is error not to charge the lesser-included offense. However, in deciding whether it was harmless beyond a reasonable doubt not to charge a lesser-included offense, the reviewing court must determine whether a reasonable jury <u>would</u> have convicted the defendant of the lesser-included offense instead of the charged offense. In other words, the reviewing court must determine whether it appears beyond a reasonable doubt that the trial court's failure to instruct on the lesser-included offense did not affect the outcome of the trial.

State v. Linnell Richmond, No. E2000-01545-SC-R11-CD, 2002 Tenn. LEXIS 473, at *37 - *38 (Tenn. Nov. 1, 2002) (citing <u>Allen</u> 69 S.W.3d at 191).

Turning again to the facts of the case <u>sub judice</u>, it appears that, although a jury <u>could</u> have convicted the defendant of assault or aggravated assault, now we must ask whether a reasonable jury <u>would</u> have convicted him of either of those offenses. The difference between the relevant forms of assault and aggravated assault in this case and aggravated robbery is the theft of the pawn shop's property. There is no doubt from the evidence in this case that the crime committed was the theft of the pawn shop's property through fear produced by use of a gun. This is the essence of aggravated robbery. Moreover, the jury was instructed on the lesser offense of simple robbery and theft, but they declined to convict on those charges opting instead for the indicted offense of aggravated robbery. Under these circumstances we are convinced beyond a reasonable doubt that no reasonable jury <u>would</u> have convicted the defendant of assault or aggravated assault upon an instruction as to those offenses. The error is therefore harmless and affords the defendant no relief.

### Prosecutor's Closing Argument

In this issue the defendant claims that the following statement of the prosecutor during closing argument to the jury was an impermissible comment on the defendant's election not to testify:

> <u>Assistant District Attorney</u> . . . He's been identified too many ways for you to think that either somebody else did it or he did not do it. And so the defense then, when the proof is this strong, when the proof is this great, when the proof is, and you wonder after you've sat here for a full day how is it that we can be here for a full day; surely the defendant has some defense.

This remark prompted an objection by defense counsel, which was immediately sustained by the trial judge. No further comments of this nature were made.

This type of comment by a prosecutor always risks running afoul of <u>Griffin v. California</u>, 380 U.S. 609, 615 (1965), which holds that the Fifth Amendment to the United States Constitution forbids any comment at closing argument on a criminal defendant's election not to testify. However, we find that his comment was more in the nature of a comment that the State's proof was uncontroverted and overwhelming. Moreover, there was no direct reference to the defendant's failure to testify nor any other alleged prosecutorial improprieties. Under these circumstances this Court has held that a defendant's Fifth Amendment rights were not violated. <u>See</u> <u>State v. Copeland</u>, 983 S.W.2d 703, 709 (Tenn. Crim. App. 1998). This issue is without merit.

<u>Victim's Testimony Concerning Identification of the Defendant<br>Shortly After the Commission of the Crime</u>

The defendant complains that the trial court erred in allowing pawn shop employee Chris Farris to testify that approximately two (2) hours after the robbery Farris identified the defendant as the robber. At the time of this identification the police had returned to the pawn shop with the defendant in the backseat of the patrol car. The defendant maintains that this identification procedure was too suggestive.

This Court has held that on-the-scene investigatory show-ups such as the type involved in the instant case are permissible within a reasonable time after the commission of an offense. <u>See</u> <u>State v. Moore</u>, 596 S.W.2d 841, 844 (Tenn. Crim. App. 1980) (citing <u>Bates v. United States</u>, 405 F.2d 1104, 1106 (D.C. Cir. 1968). Even if this show-up procedure was unduly suggestive, a <u>per se</u> rule of exclusion of evidence concerning a line-up or show-up is not warranted if the identification can otherwise be shown to be reliable. <u>State v. Philpott</u>, 882 S.W.2d 394, 400 (Tenn. Crim. App. 1994). Citing <u>Neil v. Biggers</u>, 409 U.S. 188, 199 (1972); this Court held that reliability of an identification may be determined by analyzing five (5) factors:

1. the opportunity of the witness to view the criminal at the time of the crime;
2. the witness' degree of attention at the time of the crime;
3. the accuracy of the witness' prior description;
4. the level of certainty demonstrated at the confrontation;
5. the time elapsed between the crime and the confrontation.

<u>Philpott</u>, 882 S.W.2d at 400.

In this case approximately two (2) hours after the robbery Farris identified the defendant as the man who robbed him at gunpoint. Farris had seen the defendant from only a few feet away during the defendant's initial visit to the pawn shop and during the robbery. Farris was absolutely certain of the defendant's identity as the robber. Under these circumstances we find evidence of Farris's out-of-court identification of the defendant was properly admitted.

## Destruction or Loss of Evidence

The defendant's defense at trial was essentially that he was too intoxicated at the time of the robbery to form the necessary culpable mental state for robbery, i.e. "intentional or knowing." An open bottle of Early Times whiskey, missing about two thirds of its contents, was found in the defendant's car when he was arrested. By the time of trial the partially empty bottle of whiskey had either been lost or destroyed while in police custody. The defendant maintained this partially full bottle of whiskey was essential to his defense. He filed a motion to dismiss the case against him on the grounds that the failure of police to preserve this evidence deprived him of a fair trial in violation of our federal and state constitutions.

In the case of State v. Ferguson, 2 S.W.3d 912, 916 (Tenn. 1999), our state supreme court adopted a test for courts to use in determining whether the loss or destruction of evidence deprived a defendant of a fair trial. The initial analytical step in this test for determining whether the police had any duty to preserve evidence was described as follows:

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

Id. at 917.

Although, the defendant did file a "Motion to Preserve Evidence" some months prior to trial, there is no evidence in the record as to whether the whiskey and bottle were lost or destroyed before or after this motion. There is nothing in the record to indicate that the bottle of whiskey was apparently exculpatory. Indeed, the defendant does not tell us how authorities were supposed to know of his intoxication defense before trial. Moreover, the State stipulated that about two-thirds of the bottle's contents were missing, and the trial judge offered the defendant the option of demonstrating with another bottle and water how much alcohol was in the bottle. Under these circumstances we hold that the trial court did not err in denying the motion to dismiss the defendant's case for the loss of evidence.

## Jury Instructions

The defendant requested that the following instruction be given to the jury as part of the instructions on capacity to form a culpable mental state: "If you are not satisfied beyond a reasonable doubt that the defendant possessed the culpable mental state of intentional or knowing, then you must find him not guilty."

It appears that this instruction was given when the trial judge instructed the jury on how the panel was to consider evidence of the defendant's intoxication. Immediately before this instruction the trial judge informed the jury of the meaning of acting intentionally and knowingly under Tennessee law. The defendant's argument on appeal appears to be that the trial court's failure to insert the requested instruction at the point in the charge where the defendant wanted constitutes reversible error.

It appears that the trial court did not refuse to give the defendant's special instruction, but rather that the court declined to repeat it at another point in the instructions. However, since we have not been directed to any applicable authority with respect to this discreet point, we will analyze this issue as if the special request had been denied.

In State v. Cozart, 54 S.W.3d 242 (Tenn. 2001), our state supreme court directed that a court reviewing the denial of a request for a special jury instruction should view the denial in the context of the entire jury charge. Id. At 245. The denial of a special or additional instruction is error only if the trial court's jury instructions do not fully and fairly state the applicable law. Id.

In the instant case the jury was fully apprised that in order to convict the defendant they must unanimously agree beyond a reasonable doubt that the defendant acted intentionally or knowingly. They were informed that if for any reason they were unable to reach this conclusion they must acquit. It is indeed difficult to fathom what the defendant's special request would have added to the jury's understanding of their duty and the applicable law. This issue is therefore without merit.

<u>Sentencing</u>

The defendant claims that his sentence of nine years incarceration is excessive. He reaches this conclusion based on his belief that the trial court should have either found him to be an especially mitigated offender, or sentenced him to the minimum eight (8) year sentence as a standard Range I offender. "When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, the sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. Tenn. Code Ann. §§ 40-35-103(5), -210(b); Ashby, 823 S.W.2d at 169. We are to also recognize that the defendant bears the burden of demonstrating that the sentence is improper. Ashby, 823 S.W.2d at 169.

Tennessee Code Annotated section 40-35-109 provides:

> (a) The court may find the defendant is an especially mitigated offender, if:

(1) The defendant has no prior felony convictions; and

(2) The court finds mitigating, but no enhancement factors.

(b) If the court finds the defendant an especially mitigated offender, the court shall reduce the defendant's statutory Range I minimum sentence by ten percent (10%), or reduce the release eligibility date to twenty percent (20%) of the sentence, or both reductions. If the court employs both reductions, the calculation for release eligibility shall be made by first reducing the sentence and then reducing the release eligibility to twenty percent (20%).

(c) If the defendant is found to be an especially mitigated offender, the judgment of conviction shall so reflect.

(d) The finding that a defendant is or is not an especially mitigated offender is appealable by either party.

Tenn. Code Ann. § 40-35-109.

It appears that even if a defendant is eligible for especially mitigated offender status, the decision to sentence him in such a manner lies within the discretion of the trial judge. Tenn. Code Ann. § 40-35-109 (Sentencing Commission Comments); State v. Braden, 867 S.W.2d 750, 752 (Tenn. Crim. App. 1993). The finding of even one enhancement factor disqualifies a defendant from consideration as an especially mitigated offender. Braden, 867 S.W.2d at 752.

In the instant case, the trial judge found that three enhancement factors and one mitigating factor applied to the defendant's sentence. First, the trial judge found that the defendant has a record of adjudications as a juvenile delinquent for actions that would be felonies if committed by an adult. Tenn. Code Ann. § 40-35-114 (20). Next, the judge found that prior punishments, presumably as a juvenile, had not corrected the defendant's propensity for criminal behavior.[3] Finally, the trial judge found that there was more than one victim involved in the commission of the offense. Tenn. Code Ann. § 40-35-114(3)[4]. As a mitigating factor, the trial court found that the defendant's mental condition significantly excused his culpability for the offense. Tenn. Code Ann. § 40-35-113(8).

---

[3] The trial judge specifically stated at the sentencing hearing that he was not finding that the defendant had a history of unwillingness to comply with conditions of a sentence involving release into to community. See Tenn. Code Ann. § 40-35-114(8). Rather the trial judge seemed to find that past efforts at rehabilitating the defendant had failed, thus warranting an enhanced sentence. While such a consideration is applicable in determining if an incarcerative sentence is appropriate, see Tenn. Code Ann. § 40-35-103(1)(c); State v. Ashby, 823 S.W.2d 166 (Tenn. 1991), such a consideration is not listed in the statutory enhancement factors which are the only factors allowable for consideration in enhancing the length of a sentence. State v. Anderson, 985 S.W.2d 9 (Tenn. Crim. App. 1997). It was error to use this consideration to enhance the length of defendant's sentence.

[4] Since we have concluded resolution of this issue turns on one clearly applicable enhancement factor, we need not address the issue of whether this offense constitutes one indictable offense of robbery thereby making the "multiple victim" enhancer applicable; See, State v. Lewis, 44 S.W.3d 507-08 (Tenn. 2001); or two indictable offenses, one for each victim, thereby making use of the "multiple victim" enhancer inappropriate. See, State v. Imfeld, 70 S.W.3d 698 (Tenn. 2002).

After balancing all of these considerations the trial judge concluded that a nine (9) year sentence of incarceration, one year above the minimum sentence for the offense and offender, was appropriate.

The record in this case reflects that the defendant was adjudicated a delinquent for two drug offenses that would constitute felonies if committed by an adult. See Tenn. Code Ann. § 39-17-417(c)(2), (g)(2). Thus, this enhancement factor was properly applied by the trial court, and the defendant is therefore not eligible for especially mitigated offender status. Moreover, considering the properly applied enhancement factor and the mitigating factor found in this case, we are of the opinion that a sentence of nine (9) years, one year above the relevant minimum sentence in this case, is reasonable. This issue is without merit.

Conclusion

In light of the foregoing, the judgment of the trial court is AFFIRMED.

_____
JERRY L. SMITH, JUDGE